STATE of Tennessee, Plaintiff–Appellant,

v.

SUPERIOR OIL, INC., Kelly Taylor, David Shacklett, and William Bridges, Defendants–Appellees.

Supreme Court of Tennessee, at Nashville.

April 11, 1994.

Charles W. Burson, Atty. Gen. and Reporter, Albert L. Partee, III, Sr. Counsel, Nashville, for plaintiff-appellant.

Gregory D. Smith, Clarksville, for appellee Taylor.

John E. Rogers, Sr., Carol L. Soloman, Nashville, for appellees Shacklett and Bridges.

## *OPINION*

ANDERSON, Justice.

We are asked in this appeal to determine the constitutionality of the Water Quality Control Act of 1977, which requires that the district attorney general or the grand jury obtain permission from either the Water Quality Control Board or the Commissioner of the Department of Health and Environment before a warrant, presentment, or indictment may be issued for violation of the Act. The trial court upheld the constitutionality of the Act. Because the Act infringes upon the prosecutorial discretion of the district attorney general and circumscribes the independence of the grand jury to investigate crimes and issue presentments, we conclude that it violates Article VI, § 5 and Article 1, § 14 of the Tennessee Constitution.

## *BACKGROUND*

The Davidson County Grand Jury indicted the defendants, Superior Oil, Inc., David Shacklett, Kelly Taylor, and Jeff Bridges for violations of the Water Quality Control Act of 1977 [1]. The defendants filed a motion to dismiss the indictment upon the ground that the State had not obtained permission to prosecute as required by a provision of the Act, Tenn.Code Ann. § 69–3–115(d), which provides in part:

> No warrant, presentment, or indictment arising under this part shall be issued except upon application by the board or the commissioner or upon such application authorized in writing by either of them.

The State's response attacked the constitutionality of the foregoing provision of the Act. After a hearing, the trial court granted the motion to dismiss the indictment, holding the Act constitutional.

The State appeals, contending that the Act is unconstitutional first, because it impermissibly interferes with the prosecutorial discretion inherent in the constitutional office of district attorney general; and second, because it infringes upon the independent investigative authority of the grand jury. We have determined that the Act impermissibly violates the Tennessee Constitution for the reasons articulated below.

## *CONSTITUTIONALITY OF THE STATUTE*

### *Prosecutorial Discretion*

As a threshold matter, we note that contrary to the insistence of the defendants, the

---

1. Tenn.Code Ann. §§ 69–3–101, et seq.

record clearly reflects that the district attorney general complied with Tenn.Code Ann. § 29–14–107 by giving notice to the Office of the State Attorney General that the constitutionality of a state law was being questioned. Moreover, the challenge raised to the constitutionality of this statute by both the district attorney general and on appeal, the state attorney general, is appropriate because the questioned statute directly conflicts with the inherent prosecutorial discretion of the district attorney general. *See State v. Chastain*, 871 S.W.2d 661 (Tenn.1994).

The office of district attorney general is created by Article VI, § 5 of the 1870 Tennessee Constitution, which provides in pertinent part:

> An Attorney for the State for any circuit or district, for which a Judge having criminal jurisdiction shall be provided by law, shall be elected by the qualified voters of such circuit or district.... In all cases where the Attorney for any district fails or refuses to attend and prosecute according to law, the Court shall have power to appoint an Attorney pro tempore.

Thus, the district attorney general is an elected constitutional officer similar to the office created in the first Tennessee Constitution in 1796; the constitutional office is an extension of the common law attorney general in England, which became a part of the colonial government in America. *See* 1 Blackstone's Commentaries, 45 (1769); Hammonds, The Attorney General in the American Colonies, Anglo–American Legal History, Series V.1, no. 3, at 2–21 (1939). Although there are various statutes which assign duties to the elected constitutional office of district attorney general,[2] there are no statutory criteria governing the exercise of the prosecutorial discretion traditionally

vested in the officer in determining whether, when, and against whom to institute criminal proceedings.[3] Indeed, it has been often recognized that "prosecutorial discretion in the charging process is very broad."[4] "So long as the prosecutor has probable cause to believe that the accused committed an offense, the decision whether to prosecute, and what charge to bring before a grand jury generally rests entirely within the discretion of the prosecution,"[5] limited only by certain constitutional constraints.[6]

In discussing the extent of discretion possessed by a district attorney general in Tennessee, this Court in an opinion authored by Chief Justice Henry stated:

> He or she is answerable to no superior and has virtually unbridled discretion in determining whether to prosecute and for what offense. No court may interfere with his discretion to prosecute, and in the formulation of this decision he or she is answerable to no one. In a very real sense this is the most powerful office in Tennessee today. Its responsibilities are awesome; the potential for abuse is frightening.

*Dearborne v. State*, 575 S.W.2d 259, 262 (Tenn.1978), (quoting *Pace v. State*, 566 S.W.2d 861, 866 (Tenn.1978) (Henry, C.J., concurring)). The opinion's expansive language implies almost no limit to prosecutorial discretion; however, as we have previously noted, there are constitutional restraints, and as Justice Henry observes later in the opinion:

> This prosecutorial discretion is deeply rooted in the common law and is a vital part of our common-law tradition. But this discretion has its outer limits. When the charging process—in this state the indictment—has been completed, the disposi-

---

**2.** Tenn.Code Ann. §§ 8–7–101 *et seq.* (1993).

**3.** *See generally* 9 Raybin, *Tennessee Criminal Practice and Procedure*, § 6.1 (1984 & Supp. 1993).

**4.** *Cooper v. State*, 847 S.W.2d 521, 536 (Tenn. Crim.App.1992).

**5.** *State v. Lunati*, 665 S.W.2d 739, 746 (Tenn. Crim.App.1983); *In re Death of Reed*, 770 S.W.2d 557, 560 (Tenn.Crim.App.1989).

**6.** *See e.g. Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974) (Due Process may be implicated if a prosecutor vindictively increases a charge to a felony after a misdemeanant has prevailed on appeal); *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (Equal Protection prevents selective prosecution on the basis of race, religion or other arbitrary classifications).

tion of the charge becomes a judicial function.

*Dearborne,* 575 S.W.2d at 262 (quoting *Pace,* 566 S.W.2d at 867).

As a corollary of the wide discretion vested in a district attorney general, it has long been recognized that the office has the inherent responsibility and duty to seek justice rather than to be just an advocate for the State's victory at any cost. This Court in *Foute v. State,* 4 Tenn. (3 Hayw.) 98, 99 (1816), described the responsibilities of the office of district attorney general as follows:

> He is to judge between the people and the government; he is to be the safeguard of the one and the advocate for the rights of the other; he ought not to suffer the innocent to be oppressed or vexatiously harassed, any more than those who deserve prosecution to escape; he is to pursue guilt; he is to protect innocence; he is to judge of circumstances, and, according to their true complexion, to combine the public welfare and the safety of the citizens, preserving both, and not impairing either....

The effect of Tenn.Code Ann. § 69–3–115(d), requiring that the district attorney general obtain written authorization from either the Board or the Commissioner before issuing a warrant or seeking an indictment for a criminal violation of the Water Quality Control Act of 1977, is to partially divest the district attorney general of the broad prosecutorial discretion and awesome responsibility inherent in the constitutional office. Although the General Assembly may enact laws prescribing or affecting the "procedures for the *preparation of indictments or presentments,*"[7] it cannot enact laws which impede the inherent discretion and responsibilities of the office of district attorney general without violating Article VI, § 5 of the Tennessee Constitution.

Moreover, the Act, Tenn.Code Ann. § 69–3–115(d), also restricts the power and function of the grand jury which in Tennessee has "inquisitorial powers over and shall have authority to return a presentment of all indictable or presentable offenses found to have been committed or to be triable within the county."[8] That power enables the grand jury to act independently of a court and the district attorney general by instituting a criminal action by virtue of a presentment.[9] The independent inquisitorial power and function of the grand jury is derived directly from Article I, Section 14 of the Tennessee Constitution, which provides "[t]hat no person shall be put to answer any criminal charge but by presentment, indictment or impeachment."[10] Tenn.Code Ann. § 69–3–115(d) restricts the independent inquisitorial power of the grand jury by requiring that it obtain permission from the Commissioner or the Board before returning a presentment. Such a restriction violates Article I, § 14 of the Tennessee Constitution.

Having decided that Tenn.Code Ann. § 69–3–115(d) is unconstitutional because it impermissibly interferes with the prosecutorial discretion and responsibility of the district attorney general and with the power and function of the grand jury, we must now consider whether the offending portion of the Act can be stricken and the remainder upheld.

■ The doctrine of elision applies "if it is made to appear from the face of the statute that the legislature would have enacted it with the objectionable features omitted, ... provided, of course, there is left enough of the act for a complete law capable of enforcement and fairly answering the object of its

7. *State v. Taylor,* 653 S.W.2d 757, 760 (Tenn. Crim.App.1983) (emphasis added) (Article 6, Section 5 requires the district attorney general to personally sign the charging document; an assistant could sign as his agent).

8. Tenn.R.Crim.P. 6(d); *see generally* 9 Raybin, *Tennessee Criminal Practice and Procedure,* § 9.3 (1984 & Supp.1993); Tenn.Code Ann. § 40–12–107 (1990).

9. *Stanley v. State,* 171 Tenn. 406, 104 S.W.2d 819 (1937); *State v. Marks,* 3 Tenn.Crim.App. 539, 464 S.W.2d 326 (1970), *cert. denied* (Tenn.1971).

10. *State v. Hudson,* 487 S.W.2d 672 (Tenn.Crim. App.1972), *cert. denied* (Tenn.1972).

passage."[11] The General Assembly specifically included a severability clause in the Water Quality Control Act of 1977, which provides that "[i]f any section, subsection, sentence, clause, phrase, or words of this part is for any reason held to be invalid, such decree shall not affect the validity of any remaining portion of this part."[12] The severability clause indicates an intent on the part of the legislature to have the valid parts of the Act remain in force, unless the purpose of the Act would be frustrated.[13] Clearly, allowing the criminal sanctions of the Act to be enforced in accordance with the general principles of enforcement applicable to all criminal laws would not frustrate the purpose of the Water Quality Control Act of 1977. Accordingly, we apply the doctrine of elision to Tenn.Code Ann. § 69-3-115(d), the offending provision of the Act, and uphold the remainder of the Act as complete and capable of enforcement.

### CONCLUSION

Because Tenn.Code Ann. § 69-3-115(d) requires that the district attorney general or the grand jury obtain authorization from the Commissioner of the Department of Health and Environment or the Water Quality Control Board before instituting criminal proceedings, it impermissibly interferes with the discretion and responsibility of the district attorney general and the power and function of the grand jury and, therefore, violates Article VI, § 5 and Article I, § 14 of the Tennessee Constitution. The doctrine of elision is applied and the remainder of the Water Quality Control Act of 1977 is upheld. The trial court judgment is reversed and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed against the defendants.

REID, C.J., and DROWOTA, O'BRIEN and BIRCH, JJ., concur.

---

11. *Franks v. State,* 772 S.W.2d 428, 430 (Tenn. 1989), (quoting, *Davidson County v. Elrod,* 191 Tenn. 109, 232 S.W.2d 1, 2 (1950)).

12. Tenn.Code Ann. § 69-3-120(f) (1987 & Supp. 1993).

13. *Franks,* 772 S.W.2d at 430.