**Dale M. QUILLEN, Appellant,**

**v.**

**David E. CROCKETT, District Attorney Pro Tem., Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 30, 1995.

Permission to Appeal Denied by Supreme Court April 22, 1996.

Dale M. Quillen, Michael J. Flanagan, Nashville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Jerry L. Smith, Deputy Attorney General, Nashville, for Appellee.

## OPINION

SUMMERS, Judge.

This case was transferred from the Court of Appeals, Middle Grand Division, to this Court pursuant to T.R.A.P. 17. *Quillen v. Crockett*, CA No. 01-A-01-9412-CV-00562, 1995 WL 273666 (Tenn.Ct.App. May 10, 1995). We must decide how much authority a district attorney general pro tem has in making the charging decision in a case in which he has been appointed to prosecute pursuant to Tenn.Code Ann. § 8-7-106(b) (1993). We hold that the district attorney general pro tem's power in an appointed case is equivalent to the regular district attorney general's power. His or her discretion is virtually unbridled in making the determination of whether to prosecute.

The facts giving rise to this case are unfortunate. Dale M. Quillen, appellant, was married to Pamela J. Wright. Ms. Wright filed for divorce and was represented by William R. Willis, a Nashville lawyer. Her husband, the appellant, also practiced law in Nashville. The acrimony in their divorce suit ultimately led to appellant's being charged by a true bill of indictment from the Davidson County Grand Jury with assault on Mr. Willis.[1]

---

1. The record indicates that the appellant applied for and was granted pre-trial diversion on the assault charge.

As a result of the assault charge, Mr. Willis testified in a contempt proceeding against the appellant in the Chancery Court of Rutherford County. The chancellor found appellant guilty of contempt. The appellant, however, alleged that Mr. Willis' testimony at the contempt proceeding was perjurious. Appellant applied to the Rutherford County Grand Jury pursuant to the provisions of Tenn.Code Ann. § 40–12–104 (1990) to testify concerning the perjury allegations. As a result, a true bill was returned against Mr. Willis for perjury.[2]

After Mr. Willis was charged, the duly elected district attorney for Rutherford County, Guy Dotson,[3] moved to dismiss the perjury charges against Willis. The motion was granted by the Circuit Court of Rutherford County.

After the dismissal of the charges, General Dotson recused himself. In accordance with Tenn.Code Ann. § 8–7–106 (1992) and with the consent of the appointee, General Dotson appointed District Attorney General David E. Crockett as district attorney general pro tem "to conduct specific criminal proceedings ... including grand jury proceedings ... regarding perjury allegations ... against William Willis by Attorney Dale Quillen regarding any statement or statements made by Attorney Willis in a hearing conducted on December 2, 1992. . . ." General Crockett was given a specific commission as district attorney general pro tem; he accepted his position.

After the appointment of General Crockett, the appellant communicated by letter and through retained counsel with General Crockett. The appellant also supplied General Crockett with a plethora of information, material, and statements concerning Mr. Willis' alleged perjury. The record shows numerous letters that were sent back and forth between the appellant and General Crockett. By letter dated April 7, 1994, to the appellant, General Crockett stated that he did not intend to indict or present the perjury charge to the grand jury. Crockett advised the appellant of the procedure pursuant to Tenn.Code Ann. § 40–12–104 in case the appellant wanted to apply to testify before the grand jury. Crockett further informed appellant that if the grand jury true-billed a presentment or indictment, "unless there is some new fact developed," he would move to dismiss any charge returned.

In a memorandum filed in the Rutherford County Circuit Court on May 4, 1994, General Crockett presented a thorough recitation of the history, facts, investigation, and conclusions as to the disposition of the case. He indicated that he would not pursue any charges before the grand jury on the alleged perjury of Mr. Willis. It is clear from the memorandum that General Crockett had conducted a sound investigation and was familiar with both sides of the controversy. He stated in part as follows:

> This is a high profile case involving two prominent attorneys and a very unfortunate experience. There is no good purpose to be served by seeking a new presentment in this matter, nor in putting the taxpayers to the expense of prosecuting this case in Criminal Court. In the unlikely event that the Grand Jury did return a new presentment, I will move to dismiss this case as a matter of law. As an experienced prosecutor, I recognize that almost every contested case involves testimony that conflicts with that of the adversary. The law presumes that all witnesses testify truthfully and yet it is also recognized that testimony will be given from the perspective of the various witnesses and litigants. It appears that Mr. Quillen has attempted to manipulate the judicial system. He testified before the Davidson County Grand Jury at his own request, yet that Grand Jury apparently rejected his testimony and indicted him. Quillen subsequently applied for and was granted Pre–Trial Diversion, (a tactic generally not employed by those who maintain their innocence or who claim that their accuser is relying on [perjured] testimony). Quillen then sought a

---

2. The record is silent as to whether or not the charge was a true bill of presentment or indictment; the results are the same as to disposition.

3. General Dotson has since retired as the district attorney general (DA) for Rutherford County. The present DA is William Whitesell.

perjury presentment in another county where a contempt hearing arising from the same incident had been conducted by Chancellor Corlew. That hearing has resulted in Quillen being held in contempt. Willis was not afforded an opportunity to be heard by the Rutherford County Grand Jury. This whole process seems highly questionable to me. It is violative of basic public policy which mandates that the matter of truthfulness, credibility, and [believability] should have been resolved in the criminal case in Davidson County. To permit Quillen after "throwing in the towel" in Davidson County to move to an adjacent county and seek another presentment without affording both parties a chance to be heard ... is an abuse of the criminal process and is violative of good public policy. As Attorney General Pro–Tem, I simply will not afford an attorney greater access to use the criminal justice system than any other citizen. It appears to me that Mr. Quillen has gone far beyond the limits of common sense ... and good judgement in this matter, not only in his initial attack on Willis but in his pursuit of this [alleged] perjury matter. It is my opinion, that these allegations have no merit. In conclusion, I should point out that I know neither of the principals nor their attorneys and I have not been influenced by the personalities here involved. I have relied upon the written records, which I requested from both sides. I have avoided personal interviews with either principal in a conscious effort to avoid allegations of favoritism or undue influence by either party. I believe that I have received adequate information to formulate my decision on sound legal principles. Unless otherwise ordered by [the Circuit Judge], this matter is now terminated.

After the district attorney general pro tem indicated that he did not intend to prosecute, on May 4, 1994, the appellant filed a complaint to disqualify the district attorney general pro tem and remove him from office. The appellant asked the Circuit Court of Rutherford County to appoint another district attorney general pro tem to prosecute the alleged perjury case. General Crockett was the named defendant in appellant's lawsuit.

General Crockett moved to dismiss the complaint for failure to state a claim for which relief could be granted. By order filed September 26, 1994, Judge J.S. Daniel, Circuit Court Judge, dismissed appellant's lawsuit. From this dismissal order, the appellant appeals and asks us to remove the district attorney general pro tem from office and appoint a replacement.

■ The language of Tenn.Code Ann. § 8–7–106 is clear. When a district attorney general pro tem is appointed pursuant to Tenn.Code Ann. § 8–7–106(b)(1), the acts of the district attorney general pro tem are as valid as if done by the regular district attorney general. Tenn.Code Ann. § 8–7–106(c). General Crockett was appointed to investigate the alleged perjury by Mr. Willis in Rutherford County on December 2, 1992. He had his mission, and he proceeded to act.

Since the district attorney general pro tem has the same authority as the district attorney general, the question is whether or not a district attorney's decision not to prosecute is reviewable. This is the crux of this lawsuit.

The district attorney general of a judicial district is a constitutional officer. *See* TENN. CONST., art. VI, § 5 (1870). The district attorney general is elected, as are judges, to an eight-year term. This constitutional office is very similar to the common-law attorney general in England. *State v. Superior Oil, Inc.*, 875 S.W.2d 658, 660 (Tenn.1994) (citing 1 BLACKSTON'S COMMENTARIES 45 (1769); HAMMONDS, THE ATTORNEY GENERAL IN THE AMERICAN COLONIES, ANGLO–AMERICAN LEGAL HISTORY, Series V.1, No. 3, at 2–21 (1939)). There are several statutes which assign duties to a district attorney general. *See* Tenn.Code Ann. §§ 8–7–101 et seq. (1993). However, there are no statutes which govern the exercise of prosecutorial discretion in determining whether, if at all, criminal proceedings are to be instituted.

Chief Justice wrote for our Supreme Court in *State v. Superior Oil, Inc.*, that:

[T]here are no statutory criteria governing the exercise of the prosecutorial discretion traditionally vested in the officer in deter-

mining whether, when, and against whom to institute criminal proceedings. Indeed, it has been often recognized that "prosecutorial discretion in the charging process is very broad." [Citing *Cooper v. State,* 847 S.W.2d 521, 536 (Tenn.Crim.App.1992) ]. "So long as the prosecutor has probable cause to believe that the accused committed an offense, the decision whether to prosecute, and what charge to bring before a grand jury generally rests entirely within the discretion of the prosecution," limited only by certain constitutional constraints. [Citing *State v. Lunati,* 665 S.W.2d 739, 746 (Tenn.Crim.App.1983); *In re Death of Reed,* 770 S.W.2d 557, 560 (Tenn.Crim.App.1989); *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974) (Due Process may be implicated if a prosecutor vindictively increases a charge to a felony after a misdemeanant has prevailed on appeal); *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (Equal Protection prevents selective prosecution on the basis of race, religion or arbitrary classifications) ]

875 S.W.2d at 660.

The late Chief Justice Henry was clear in his concurrence in *Dearborne v. State:*

> [The district attorney general] is answerable to no superior and has virtually unbridled discretion in determining whether to prosecute and for what offense. No court may interfere with [his or her] discretion to prosecute, and in the formulation of this decision he or she is answerable to no one. In a very real sense this is the most powerful office in Tennessee today. Its responsibilities are awesome; the potential for abuse is frightening.

*Dearborne v. State,* 575 S.W.2d 259, 262 (Tenn.1978), (quoting *Pace v. State,* 566 S.W.2d 861, 866 (Tenn.1978) (Henry, C.J., concurring)).

■ Subject to constitutional constraints, the district attorney general's discretion in charging determinations is practically unbridled. This discretion does have outer limits. When a district attorney general makes a decision to charge and such has been completed, then the charge's future disposition is relegated to the judiciary. *See* Tenn.R.Crim. P., Rule 48.

■ It has long been established that a prosecutor's duty is to seek justice, not convictions. Often, however, justice is merely a term of art to be defined purely by the mind of the beholder. The district attorney general is an arbiter and, in many cases, an umpire between the people and the people's government. His or her job is one of safeguarding and advocating the rights of the people. When a district attorney general is aware that someone is being harassed, or due to vindictiveness or animosity, being oppressed, the prosecutor is duty-bound to intervene and assure a just result.

■ Inevitably, a prosecutor will make a decision which will be scrutinized, criticized or misunderstood. But our constitutional system of government vests the prosecutor in his or her own district the power and the authority to make charging decisions without veto. If a citizen having an interest in a controversy, whether it be criminal or civil, was able to veto the district attorney's charging decision, the wheels of justice would grind to a halt. If voters are in disagreement with a prosecutor's charging determinations, they have the ultimate veto at the ballot box.

■ General Crockett opined that there was no chargeable offense to place against Mr. Willis. He chose not to present or indict. He investigated the matter and completed his mission. His job is complete, and his pro tem term has expired. Therefore, he cannot be removed, because the office of district attorney general pro tem has terminated.

■ The trial judge was proper in refusing to appoint another district attorney general pro tem. Neither the elected district attorney general nor the pro tem had failed to attend court or was disqualified to act, and there was not a vacancy in the office. Pursuant to Tenn.Code Ann. § 8–7–106(a), one of these three situations must occur before a judicial appointment is appropriate.

The trial court ruled correctly. This Court will not look behind General Crockett's deci-

sion to exercise his discretion. The judgment of the trial court is

**AFFIRMED.**

PEAY and WELLES, JJ., concur.