IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 22, 2001

## STATE OF TENNESSEE v. KERMIT PENLEY, JAMA PENLEY and ANGELA CUNNIFF

**Appeal from the Circuit Court for Greene County**
**No. 01-CR-043     James Edward Beckner, Judge**

_____

### No. E2001-01386-CCA-R10-CD

_____

The State of Tennessee has applied to this court for permission to pursue an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 10. In its application, the State complains that because the grand jury had yet to take action to charge the respondents in connection with a homicide, the Greene County Circuit Court was not empowered to conduct pretrial conferences, to enter pretrial orders, to set a trial date, or to order the state to file its notice of intent to seek the death penalty or life without possibility of parole. We grant the Rule 10 appeal and generally vacate the lower court's pretrial conference orders.

**Tenn. R. App. P. 10; Orders of the Circuit Court vacated in part, affirmed in part.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J. and JOSEPH M. TIPTON, J., joined.

Paul G. Summers, Attorney Genereal & Reporter, Jennifer L. Smith, Assistant Attorney General, for the appellee, State of Tennessee

Susanna Laws Thomas, Newport, Tennessee, for the appellee, Kermit Penley.

Francis Xavier Santore, Francis X. Santore, Jr., Greeneville, Tennessee, for the appellee, Jama Penley.

William Louis Ricker, William Hall Bell, Greeneville, Tennessee, for the appellee, Angela Michelle Cunniff.

### OPINION

Murder charges against the three respondents, Kermit Penley, Jama Penley, and

Angela Cunniff, were bound over to the Greene County Grand Jury on March 2, 2001. Apparently because the state is awaiting the results of some forensic tests, it has yet to seek an indictment from the grand jury. Despite the absence of an indictment or any other charging instrument, on May 18, 2001, the trial court held a pretrial conference and entered a pretrial order in which it set the "case" for trial on September 17, 2001, imposed discovery deadlines, and established a May 25, 2001 deadline for the filing of any notice of intent to seek the death penalty or life without possibility of parole (hereinafter referred to as a "notice of intent"). The state filed exceptions to the court's order and moved for a continuance and an interlocutory appeal. *See* Tenn. R. App. P. (9). It also filed "under protest" a notice of intent. The trial court partially denied the continuance and denied the Rule 9 request. The state then filed with this court on June 11, 2001 the current Rule 10 application and asked for a stay of proceedings in the trial court.

While the application and stay request were under review, the application was supplemented to reflect that, on June 28, 2001, the trial court held a second pretrial conference and, on July 2, 2002, it entered a new pretrial scheduling order in which it "severed [the] matters" and reset them for trials on separate January dates. The court also established, *inter alia*, a detailed discovery schedule, plea-bargaining and motions deadlines, and a "gag order." The July 2 order also revoked the respondents' pretrial bonds and stated that the "Court strongly suggests that the cases be presented to the Grand Jury in December."

The state posits that the trial court was without authority to conduct pretrial conferences and to enter the resulting pretrial scheduling orders. It also complains that the trial court had no basis for compelling the state to file its notice of intent. It asserts that, in denying its "motion for relief from the pre-trial order . . . , the lower court so far departed from the accepted and usual course of judicial proceedings as to require immediate review." *See* Tenn. R. App. P. 10(a).

Through separate counsel, Jama Penley and Angela Cunniff have responded to the state's application. In her response, Penley takes "no position regarding the State's application," but she posits that the pretrial orders may be "in contravention of law" and questions the validity of a pre-indictment notice of intent to seek the death penalty. She requests this court to order the district attorney general to expeditiously present her case to the Greene County grand jury.

Respondent Cunniff responded to the application by singularly addressing the notice of the state's intent to seek the death penalty. Essentially, she agrees with the trial court "obliging" the state to file the notice because it qualified her for the appointment of "capital case" counsel.

Respondent Kermit Penley filed no response.

Subsequent to the supplementation of the application, this court stayed the proceedings in the trial court and ordered that a transcript of that court's June 28 pretrial conference be filed. The transcript was filed on August 3, 2001.

I. Action on the Application.

2

We now determine that the state has established a basis for a Rule 10 appeal. We grant the appeal and proceed to dispose of the issues raised.

## II. Disposition of the Appeal.

We recognize that a Tennessee circuit or criminal court, being the court exercising general trial jurisdiction over criminal cases in Tennessee, has organizational and administrative authority over the grand jury. A general sessions court in Tennessee has authority to bind criminal cases over to the grand jury "if probable cause be found," Tenn. Code Ann. § 40-4-101(5) (1997). The grand jury, in turn, operates within the aegis of the circuit or criminal court. *See* Tenn. R. Crim. P. 6(a) (providing procedures for the circuit or criminal court's impaneling, swearing in, and charging grand juries and authorizing the court to form special grand juries); Tenn. Code Ann. § § 40-12-101 (1997) (authorizing court to impanel grand juries), 40-12-103 (1997) (authorizing judges of the circuit or criminal courts to reconvene grand juries), 40-12-105 (1997) (providing for the circuit court clerk to publish notices of meetings of the grand jury), 40-13-108 (1997) (providing for the return of the indictment "to the court"), 40-13-109 (requiring indictments for felony offenses to be entered into the court's minutes); *see also* Tenn. Const. art VI, § 8 ("The jurisdiction of the Circuit, Chancery and other Inferior Courts, shall be as now established by law, until changed by the Legislature.") The trial judge appoints the grand jury foreperson. Tenn. R. Crim. P. 6(g). Obviously, the trial court, being the circuit or criminal court as the case may be, has responsibility for organizing, impaneling, instructing, and providing leadership for the grand jury. In one sense, then, matters bound over to a grand jury dwell within the bosom of a trial court. Moreover, we are cognizant of an "inherent common law power of [a] trial court to control its own jurisdiction and docket." *See State v. Benn*, 713 S.W.2d 308, 310 (Tenn.1986).

That said, a trial court's role in enabling the activities of the grand jury does not empower it to become involved in the business of that body. *See, e.g., Stanley v. State*, 171 Tenn. 406, 104 S.W.2d 819 (1937) (grand jury is a body acting independently of the court and the district attorney general). Specific provisions of our law illustrate how the trial court is constrained not to act on matters that remain *in utero* with the grand jury.

The first such constraint that we mention concerns prosecutorial prerogative. The propriety and scope of prosecuting defendants for the commission of criminal offenses are entrusted to the district attorney general. *See* Tenn. Const. art. VI, § 5; Tenn. Code Ann. § 8-7-103(1), (2), (4) (1993). "The District Attorney General's discretion to seek a warrant, presentment, information, or indictment within its district is extremely broad and subject only to certain constitutional restraints. The District Attorney General and only the District Attorney General can make the decision whether to proceed with a prosecution for an offense committed within his or her district." *Ramsey v. Town of Oliver Springs*, 998 S.W.2d 207, 209 (Tenn. 1999) (internal citations omitted). "No court may interfere with [the district attorney general's] discretion to prosecute, and in the formulation of his decision, he or she is answerable to no one." *Pace v. State*, 566 S.W.2d 861, 867 (Tenn. 1978); *see Quillen v. Crockett*, 928 S.W.2d 47, 51 (Tenn. Crim. App. 1995). Even though the legislature may enact procedures for the formation and operation of grand juries, neither it nor

3

the courts, which themselves enable the activities of the grand juries, may "impede the inherent discretion and responsibilities of the office of district attorney general without violating Article VI, § 5 of the Tennessee Constitution." *State v. Superior Oil*, 875 S.W.2d 658, 661 (Tenn. 1994).

The district attorney general's discretion to "proceed with a prosecution" obviously entails discretion about when – or if – a case should be presented to the grand jury. *See* Tenn. Code Ann. §§ 8-7-103(4) (1993), 40-13-304 (1997). In the present case, the grand jury has yet to act upon the respondents' bound-over cases. We glean from the record available to us that the lack of action may stem from the prosecutor's desire to prepare and present evidence that requires time for forensic evaluation. We cannot discern whether the nature of the forensic testing is such that the results might influence the district attorney general not to prosecute, but that is no concern of ours. The case remains within the district attorney general's discretion to determine "whether to prosecute, and what charge to bring before a grand jury." *See Superior Oil* at 660. Although we discern that the trial court, through its scheduling orders, deadline for filing motions and notices of intent, trial settings, and suggestions to obtain an indictment, laudably intended to facilitate its docket by expediting these cases, we must respectfully conclude that these order provisions invade the district attorney's domain.

Second, not only do the conferences and orders impinge upon the district attorney general's discretionary domain, but they are incongruent with the inherent authority and independence of the grand jury. In Tennessee, a grand jury has the power "to return a presentment of all indictable offenses found to have been committed or to be triable within the county." Tenn. R. Crim. P. 6(d). "That power enables the grand jury to act *independently of a court* and the district attorney general by instituting a criminal action by virtue of a presentment." *Superior Oil,* 875 S.W.2d at 661 (emphasis added); *see State v. Marks*, 3 Tenn. Crim. App. 539, 542, 464 S.W.2d 326, 328 (1970) (holding that court may not abate indictment because it is based upon hearsay evidence, court observes that the "grand jury being an agency of our government . . . may act independent [sic] of the court and the district attorney" (citing *Stanley v. State*, 171 Tenn. 406, 104 S.W.2d 819 (1937)); *see also Carroll v. State*, 517 S.W.2d 13, 16 (Tenn. Crim. App. 1974). The power vested in the grand jury is constitutionally based. *Superior Oil,* 875 S.W.2d at 661; *see* Tenn. Const. art. I, § 14.

Furthermore, the grand jury's power over an *indictment* that is requested by the district attorney general is independent of the district attorney general. He or she assists the grand jury by "giving legal advice as to any matters cognizable" by the grand jury, but neither the district attorney general nor any other "officer or person" may be present with the grand jury "when the question is taken upon the finding of an indictment." Tenn. R. Crim. P. 6(h); *see Tiller v. State*, 600 S.W.2d 709, 712 (Tenn.1980); *Marks*, 3 Tenn. Crim. App. at 542, 464 S.W.2d at 328. Thus, after the district attorney general or his or her assistant leaves the grand jury room, the decision whether to vote an indictment – and presumably the pace of making that decision – is a matter of the grand jury's prerogative, as in the case of voting a presentment.

The independence of the grand jury requires that courts not rush that body to judgment. It may well be that, in the present case, the grand jury has not yet considered the respondents' cases, but on the other hand, the courts are not really privileged to know that, unless the grand jury has reported on the matter. Proceedings before the grand jury are secret. Tenn. R. Crim. P. 6(k); *State v. Hodge*, 695 S.W.2d 544, 546 (Tenn. Crim. App. 1985). It falls to neither this court nor a trial court to know the status of any given matter in the bosom of the grand jury.

Perhaps the lower court's deadline for filing a notice of intent in a potential homicide case and setting trial dates do not effectuate control over the grand jury, but one may surmise that these orders could manipulate grand jurors who, as members of the public, may well read or hear in the news media accounts of the filing of a notice of intent in, or the setting for trial, cases which they as a grand jury are yet to hear. For instance, in the present case, the grand jurors who meet to consider the present matters in December may be perplexed to discover that the cases are already set to be tried only a few weeks following the grand jury meeting. Some grand jurors could assume that they are expected to vote for an indictment.

If some initiative of judicial policy is in order to govern situations as the one before us, we defer to our supreme court to establish such policy. *See* Tenn. Code Ann. § 16-3-501 (1994) (supreme court empowered "with general supervisory control over all the inferior courts of the state"). In the present case, however, we believe the effect of the trial court's orders is to encroach upon the powers of the grand jury.

Third, our rule authorizing pretrial conferences and pretrial orders in criminal cases provides that the conference may be held at "any time *after the filing of the indictment, presentment or information*." Tenn. R. Crim. P. 17.1 (emphasis added). In the present case, neither the pretrial conferences nor generally the resulting orders are authorized by Rule 17.2.[1]

Finally, we note that Rule 12.3(b) provides for the filing of a notice of intent *"when a capital offense is charged in the indictment or presentment*." Tenn. R. Crim. P 12.3 (emphasis added). In the present case, the trial court influenced the state to file its notice of intent *before* the filing of any indictment or presentment. We must agree with the state that the terms of Rule 12.3 protect it from being forced to file the notice at this early stage of the proceedings.

A trial court does not assume plenary control over the case until the decision to charge has come into fruition in the form of a charging instrument. *Quillen*, 928 S.W.2d at 51. Indeed, the trial court's jurisdiction to act in the matter, apart from the question of bail which we address below, is commenced when the charging instrument issues and is returned to the trial court. *See State v. Hammond*, 30 S.W.3d 294, 303-04 (Tenn. 2000) (a valid indictment confers jurisdiction upon the trial court); *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn. 1998); *see* Tenn. R. Crim. P. 12(a) (the

---

[1]We decline to apply at this juncture in the present case any notion that the trial court has an inherent power to hold pretrial conferences, apart from Rule 17.1. Any such power should not be used to encroach upon the powers and prerogatives of the district attorney general and the grand jury.

lead "pleading" in a criminal case in the trial court is the indictment, presentment, or information). In the present case, the transition from prosecutorial discretion to the trial court's jurisdiction has yet to occur.

We point out, however, that Tennessee law admits an exception to the foregoing principle that the trial court is not authorized to act with respect to matters pending before the grand jury. In questions of bail, the general sessions court judge or magistrate has authority to determine the conditions of bail "at any time prior to or at the time the defendant is bound over to the grand jury," and the circuit or criminal court has authority for such a determination "at any time prior to conviction or thereafter." Tenn. Code Ann. § 40-11-104 (1997). Thus, whereas the magistrate's authority to determine bail matters ends after the case is bound over, the trial judge has authority in bail matters "at any time prior to conviction," including the time during which the matter is pending before the grand jury.[2]

## III. Conclusion.

Based upon all of the foregoing principles and rules, we hold that, as of the time the trial court acted, it erred in conducting pretrial conferences, issuing scheduling orders, severing the defendants, setting the cases for trial, establishing a deadline for filing the notices of intent, and taking the other actions outlined in the two sentencing orders, with the exception of taking action with respect to the respondents' pretrial bail.

In summary, we grant the state's Rule 10 application. With the exception of the trial court's revocation of pretrial bail contained within its July 2, 2001 order, the provisions of that court's May 18 and July 2, 2001 pretrial conference orders will be vacated.[3] In order to fully

---

[2]We do not foreclose the possibility that an arrested defendant may have a presentable speedy trial claim that matures prior to the filing of a charging instrument in the trial court. *See United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463 (1971) (speedy trial rights arise "after formal accusation, either by arrest or by grand jury action"*); see also, State v. Gray*, 917 S.W.2d 668, 673 (Tenn. 1996) (constitutional due process guarantees provide speedy trial protection between commencement of offense and commencement of adversarial proceedings).

We also do not question the trial court's authority to appoint counsel for any of the respondents who may be indigent. The provisions of our law that mandate and facilitate the appointment of counsel for indigent defendants in criminal cases do not preclude counsel being appointed before a charging instrument is filed. Tennessee Rule of Criminal Procedure 44(a) provides that "[e]very indigent defendant shall be entitled to have assigned counsel in all matters necessary to the defense and *at every stage of the proceedings*, unless the defendant executes a written waiver." (emphasis added); *see also* Tenn. Code Ann. § 40-14-202(a) (1997) (authorizing the appointment of counsel for indigent defendants in "all felony cases" without requiring the prior filing of a charging instrument). If for no other reason for counsel to be appointed before the return of an indictment, we recognize the possible need for counsel to serve the defendant in an appropriate case on the issue of pretrial bail.

[3]The revocation of bail is excepted from the vacated provisions, but not because this court is ruling upon the merits of that lower court action. There is before this court no issue of review of the merits of the lower court's bail revocation, *per se*. *See* Tenn. R. App. P. 8. Rather, our action regarding the bail revocation is merely our recognition that the lower court's handling of the bail issues is mandated by Code section 40-11-104.

effectuate the vacating of the pretrial conference orders of the court below, the notices of intent to seek the death penalty or life sentence without possibility of parole previously filed by the state are stricken. Upon the issuance of the mandate of this court's action, the stay previously imposed by this court will be vacated.

_____

JAMES CURWOOD WITT, JR., JUDGE