IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 26, 2022 Session

**STATE OF TENNESSEE v. SONYA NALE**

**Appeal from the Circuit Court for Bledsoe County**
**Nos. 2019-CR-19, 2019-CR-20    William B. Acree, Senior Judge**
_____

**No. E2021-00276-CCA-R9-CD**
_____

D. Kelly Thomas, Jr., J., concurring in part and dissenting in part.

I respectfully dissent from the majority's holding that the trial court abused its discretion by disqualifying the Twelfth Judicial District Attorney General's office. As noted by the majority, a trial court's decision to disqualify a prosecutor or an entire district attorney general's office is reviewed under an abuse of discretion standard. Clinard v. Blackwood, 46 S.W.3d 177, 182 (Tenn. 2001); State v . Culbreath, 30 S.W.3d 309, 313 (Tenn. 2000). A court abuses its discretion by "apply[ing] an incorrect legal standard, or reach[ing] a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999); see Clinard, 46 S.W.3d at 182.

Relevant to the participation of the District Attorney General's Office in this case, our supreme court has stated in Culbreath, that "an actual conflict or an apparent conflict may exist anytime a lawyer cannot exercise his or her independent professional judgment free of 'compromising influences and loyalties.'" 30 S.W.3d at 315 (quoting State v. Tate, 925 S.W.2d 548, 554 (Tenn. Crim. App. 1995)). Under the facts presented, I cannot agree with the majority that the trial court applied an incorrect legal standard or reached a decision that is against logic or reasoning when it disqualified the District Attorney General's Office.

Here, the Defendant is being prosecuted by the Twelfth Judicial District Attorney General's Office for bribery of the General Sessions Judge. Specifically, the indictment reads as follows:

[The Defendant] on the 21st day of September, 2018 and the 5th day of October, 2018, inclusive, in Bledsoe County, Tennessee, and before the finding of this Indictment, unlawfully and knowingly offered a pecuniary benefit, to-wit: $10,000.00, to Howard Upchurch, a public servant, with the

intent to influence the said public servant's exercise of discretion or other action in the said public servant's official capacity; all in violation of T[ennessee] C[ode] A[nnotated section] 39-16-102[.]

The majority correctly notes that the trial court judge found that an appearance of impropriety existed, rather than finding that an actual conflict of interest was present. However, the trial court did not make any affirmative conclusion in this regard. Under the Tennessee Rules of Professional Conduct, "[e]xcept as law may otherwise expressly permit, a lawyer serving as a public officer or employee . . . is subject to RPCs 1.7 and 1.9[.]" Tenn. Sup. Ct. R. 8, RPC 1.11(d)(1). Pursuant to Rule 1.7, a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a). I feel constrained to observe that arguably, pursuant to Rule 1.7(a), the District Attorney General Office's representation of the State of Tennessee is "materially limited by" its "responsibility to . . . a third person," that being Howard Upchurch, the General Sessions Court Judge for Bledsoe County, who is also the prosecuting witness.

Our supreme court in Culbreath made some pertinent observations in this regard:

The prosecutor's discretion about whom to prosecute and to what extent they should be prosecuted, however, is vast and to a large degree, not subject to meaningful review. See Ramsey [v. Town of Oliver Springs], 998 S.W.2d [207,] 209 [(Tenn. 1999)]; State v. Superior Oil, Inc., 875 S.W.2d 658, 660 (Tenn. 1994) ("prosecutorial discretion in the charging process is very broad"). Moreover, as the United States Supreme Court has recognized, the prosecutor's discretion goes beyond initial charging decisions:

A prosecutor exercises considerable discretion in matters such as the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be charged with what offenses, which persons should be utilized as witnesses, whether to enter into plea bargains and the terms on which they will be established, and whether any individuals should be granted immunity. These decisions, critical to the conduct of a prosecution, are all made outside the supervision of a court.

Young [v. United States ex rel. Vuitton Et Fils S.A.], 481 U.S. [787,] 807 [(1987)]. In sum, . . . the foundation for the exercise of the vast prosecutorial

- 2 -

discretion is freedom from conflict of interest and fidelity to the public interest.

30 S.W.3d at 316. In addition, Comment [8] to Rule 1.7 provides guidance for identifying when there is a significant risk that the representation of one or more clients will be materially limited by a lawyer's other responsibilities or interests:

> Even where there is no direct adversity between clients, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are: what is the likelihood that a difference in interests will eventuate and, if it does, will it materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client?

Tenn. Sup. Ct. R. 8, RPC 1.7, cmt. [8].

The State and majority refer to the General Sessions Judge as merely a witness; however, Judge Upchurch was the subject of the bribery, and the individual who reported the offense. Therefore, Judge Upchurch's cooperation with the Twelfth Judicial District Attorney General's office and participation in the Defendant's prosecution were crucial. The District Attorney General's office prosecutes the criminal cases in Judge Upchurch's court, absent some reason for disqualification. Furthermore, in my view, the small close-knit nature of Bledsoe County only exacerbates this problem, rather than making it an exception. Judge Upchurch is the only General Sessions Judge in Bledsoe County. Listing General Sessions Judges in the State of Tennessee, https://www.tncourts.gov/courts/general-sessions-courts/judges (searchable by county). Based upon these observations, I could see how such duties would create a "significant risk" that the District Attorney General's representation of the State of Tennessee would be "materially limited by" its "responsibility to" the General Sessions Judge, thus, a conflict of interest may be present. Circumstances that arguably establish a conflict of interest would certainly buttress the trial court's conclusion that at least the appearance of impropriety exists.

Relative to whether an appearance of impropriety exists, it is determined objectively from the perspective of a reasonable lay person with knowledge of all reasonable facts. Clinard, 46 S.W.3d at 187. In this regard, the Culbreath Court has stated,

- 3 -

To ensure and maintain public confidence in the integrity of the government, public officials, including prosecutors, must act impartially and responsibly. Government officials must be held to high ethical standards to make certain their activities are conducted in the public's interest. Furthermore, 'governments have a responsibility to the public to avoid even the appearance of impropriety and to act to reduce the opportunities and incentives for unethical behavior by their officials and employees.' This is true of the prosecuting attorney because 'an appearance of impropriety on the part of a government attorney will inevitably harm not only the individual attorney, but also the entire system of government that allows such improprieties to take place.'

30 S.W.3d at 316 (quoting Roberta K. Flowers, What You See Is What You Get: Applying the Appearance of Impropriety Standard to Prosecutors, 63 Mo. L. Rev. 699 (1998) (citations omitted)).

I feel constrained to note that the Circuit Court Judges in the Twelfth Judicial District recused themselves from the Defendant's prosecution due to the General Sessions Judge's involvement in this case. In the order entered to the effect, it was stated,

For good cause shown and it appearing to the [c]ourt that all trial judges in the [Twelfth] Judicial District have a conflict due to one of the key witnesses, Howard Upchurch, being an attorney in this district who makes regular appearances before all trial judges in this district and surrounding districts.

If the Circuit Court Judges feel that a conflict exists, then I cannot say the trial court abused its discretion in holding that an appearance of impropriety is present regarding the Twelfth Judicial District Attorney General's Office. Arguably, an even more egregious situation is evident—Mr. Upchurch is not merely an attorney who frequently appears before the Circuit Court Judges of the Twelfth Judicial District, but he is a Judge who adjudicates the District Attorney General's criminal prosecutions in Bledsoe County General Sessions Court. Moreover, proceedings in General Sessions Court are preliminary and do not involve juries or the rights attendant to jury trials.

In my opinion, the majority's analysis comes perilously close to requiring evidence of actual impropriety rather than just an appearance of impropriety. Any lay person could reasonably think that the District Attorney General's office would approach this prosecution differently, possibly looking like an "insider-deal" to those unfamiliar with the legal system or like the Defendant would not receive the proverbial "fair shake." More than just a mere possibility of impropriety exits under these circumstances. Furthermore, these concerns would apply universally to the entire office, touching the office as a whole.

- 4 -

In short, it would appear that the District Attorney General's Office could not exercise its independent professional judgment free of "compromising influences and loyalties." Based upon these considerations, I would affirm the order of the trial court disqualifying the Twelfth Judicial District Attorney General's Office. See Culbreath, 30 S.W.3d at 316 (the Tennessee Supreme Court holding that the Shelby County District Attorney General's Office was disqualified from prosecuting defendants based upon a conflict of interest created by the use of a private attorney hired as a special prosecutor for the county, who had received substantial compensation from special interest groups).

Finally, I would agree with the majority's conclusion that the banking relationship between the General Sessions Judge, the District Attorney General, and an Assistant District Attorney General, did not, by itself, create an appearance of impropriety.

_____
D. KELLY THOMAS, JR., JUDGE