IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 26, 2022 Session

## STATE OF TENNESSEE v. SONYA NALE

**Appeal from the Circuit Court for Bledsoe County
Nos. 2019-CR-19, 2019-CR-20    William B. Acree, Senior Judge**

_____

### No. E2021-00276-CCA-R9-CD
_____

The Defendant, Sonya Nale, is charged by indictment with bribery of a public servant, a Class B felony. *See* T.C.A. § 39-16-102 (2018). After the trial court granted the Defendant's motion to disqualify the Twelfth Judicial District Attorney's office, we granted the State's application for an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9 to review the trial court's order. We reverse the trial court's order disqualifying the district attorney general's office from prosecuting the case.

**Tenn. R. App. P. 9 Interlocutory Appeal; Order of the Circuit Court Reversed;
Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., joined. D. KELLY THOMAS, JR., JJ., filed a separate opinion, concurring in part and dissenting in part.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Branton, Assistant Attorney General; J. Michael Taylor, District Attorney General; David Shinn, Assistant District Attorney General, for the appellant, State of Tennessee.

Thomas K. Austin, Dunlap, Tennessee, for the appellee, Sonya Nale.

### OPINION

The Defendant is alleged to have offered a bribe to a part-time Bledsoe County General Sessions Court judge, who reported the Defendant's alleged conduct to the Tennessee Bureau of Investigation. The general sessions judge also maintains a private criminal defense practice in the Twelfth Judicial District. The general sessions judge is a member of the board of directors of a local bank, as is an assistant district attorney general. The district attorney general has outstanding secured loans with the bank.

Because the general sessions judge was the target of the Defendant's alleged bribery, he is a State's witness in the present case.

The Defendant filed a Motion to Disqualify the Twelfth Judicial District Attorney's Office, in which she alleged that both an actual conflict of interests and the appearance of impropriety existed. As relevant to this appeal, the motion alleged facts regarding (1) the State's appearance, through the district attorney general, in criminal matters heard by the general sessions judge; (2) the general sessions judge's private practice, in which he litigated criminal cases against the State, through the district attorney general, and (3) the district attorney general's indebtedness to the bank at which the general sessions judge sat on the board of directors.

At the hearing on the motion, the parties did not present evidence, although they later entered into stipulations of fact consistent with those we have recited. Defense counsel stated that the Defendant was alleged to have offered money to a general sessions judge to "make a [driving under the influence case for another individual] go away." The trial court noted that the Defendant had a second pending criminal case, and the assistant district attorney general stated that the Defendant was alleged to have offered a bribe to the arresting officer in the driving under the influence case. Defense counsel argued that a reasonable person aware of the facts would not think the Defendant "is going to get a fair shake." The assistant district attorney general noted that the motion to disqualify had not been filed for one and one-half years, "after we had our final attempt to negotiate a settlement." The record reflects that the indictment was returned on March 25, 2019, and that the motion to disqualify was filed on December 15, 2020. The assistant district attorney general stated that his office had not discussed with the general sessions judge any plea offer the State made to the Defendant.

In a written order, the trial court found that the judge who was the alleged target of a bribe was a part-time general sessions judge, that the general sessions judge had been the target of the alleged bribe by the Defendant, and that the general sessions judge was an essential witness for the State in the present case. The court found, "The Twelfth Judicial District Attorney General and his staff prosecuting cases in [the judge's] court creates an appearance [the judge] would have an improper influence over the Twelfth Judicial District Attorney General's and his staff's decisions with regards to the prosecution of the defendant in this matter." Therefore, the court concluded, the district attorney general's office staff "shall be disqualified." The court also consolidated the present case with the other pending bribery case.

In a later-filed document titled Stipulation of Facts, which was signed by the trial court, the parties set forth their stipulated facts, which included statements that the

general sessions judge and an assistant district attorney general sat on the board of directors of a bank from which the district attorney general had borrowed money secured by three deeds of trust. The trial court stated in the stipulations document that these facts related to the bank "do not create a conflict or an appearance of a conflict for the Twelfth Judicial District Attorney General and his staff and are not relevant to this matter." The court stated that its ruling had relied upon the district attorney general's office's appearing in court before the general sessions judge.

The State filed an application with this court for an interlocutory appeal by permission pursuant to Tennessee Rule of Appellate Procedure 9, which we granted. After receiving the parties' briefs and oral arguments, the case is now before us for review.

We preface our discussion by noting that the State contends that the trial court erred in disqualifying the district attorney general's office on the basis of the district attorney general's appearance in other cases in the general sessions judge's court. The Defendant counters that the trial court abused its discretion by not finding that an appearance of impropriety based upon the relationships of the general sessions judge and a member of the district attorney general's staff with the bank at which the district attorney general has outstanding loans. The State responds in its reply brief that the Defendant's argument regarding the trial court's failure to rely on the banking relationship as an additional basis for disqualification is beyond the scope of this court's grant of an interlocutory appeal. Thus, we must begin our analysis with consideration of the scope of the appeal.

In contrast to the broad latitude afforded both the appellant and the appellee in an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3, an interlocutory appeal by permission pursuant to Rule 9 involves limited review of "'those matters clearly embraced within the question certified to'" the appellate court. *Young v. City of LaFollette*, 479 S.W.3d 785, 789 (Tenn. 2015) (quoting *Tenn. Dept. of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d, 299, 300 (Tenn. 1975)). In the present case, the trial court granted the State's motion for a Rule 9 appeal and defined the issue as follows:

> Whether the relationship between the general sessions court judge and district attorney general creates an appearance of impropriety regarding disqualification of the district attorney general's office when the district attorney general's office is prosecuting a crime of this nature under these circumstances?

Thereafter, we accepted the application for an interlocutory appeal of this issue. We view the Defendant's issue regarding the banking relationship involving the general sessions judge and the district attorney general as within the scope of the certified question, and we will consider it in our analysis.

A party moving to disqualify an attorney in a criminal case must establish a conflict of interests by a preponderance of the evidence. *State v. White*, 114 S.W.3d 469, 476 (Tenn. 2003). A trial court's decision to disqualify an attorney for a conflict of interests and to impute an attorney's conflict of interests upon the attorney's firm is reviewed for an abuse of discretion. *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *see State v. Culbreath*, 30 S.W.3d 309, 312-13 (Tenn. 2000). A court abuses its discretion by "apply[ing] an incorrect legal standard, or reach[ing] a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999); *see Clinard*, 46 S.W.3d at 182.

When deciding whether a district attorney general or his office must be disqualified from prosecuting a case, a trial court must consider whether an actual conflict of interests or the appearance of impropriety exists. *State v. Coulter*, 67 S.W.3d 3, 29 (Tenn. Crim. App. 2001); *see State v. Culbreath*, 30 S.W.3d 309, 312-13 (Tenn. 2000). If the court determines that disqualification is required on either basis, the court must consider whether the entire district attorney general's office should be disqualified. *Coulter*, 67 S.W.3d at 29. A conflict of interests "includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of 'compromising interests and loyalties.'" *Culbreath*, 30 S.W.3d at 312 (citing Tenn. R. Sup.Ct. 8, EC 5–1) (replaced)). Our supreme court has said that the appearance of impropriety must be more than "the mere possibility of impropriety" and that "it must be real." *Clinard*, 46 S.W.3d at 187. It is determined objectively, from the perspective of a reasonable layperson with knowledge of all of the relevant facts. *Id.*

In the present case, the trial court disqualified the district attorney general's office based upon an appearance of impropriety, not based upon a finding of an actual conflict of interests, and the parties' appellate arguments have focused on the appearance of impropriety, rather than on the existence of an actual conflict of interests. Further, the State conceded at oral argument that if disqualification of the district attorney general himself was appropriate, the record had not been developed to establish how the remaining staff of the district attorney general's office might proceed with appropriate screening measures. We will limit our consideration to whether the trial court erred in determining that an appearance of impropriety exists.

The State is represented by the district attorney general, who "is not an advocate for the victim of a crime or the witnesses for the State but is instead the representative of the sovereign state of Tennessee charged with 'safeguarding and advocating the rights of the people.'" *State v. Johnson*, 538 S.W.3d 32, 51 (Tenn. Crim. App. 2017) (quoting *Quillen v. Crockett*, 928 S.W.2d 47, 51 (Tenn. Crim. App. 1995)). The district attorney general and his staff "are expected to be impartial in the sense that they must seek the truth and not merely obtain convictions." *Culbreath*, 30 S.W.3d at 314; *see State v. White*, 114 S.W.3d 469, 477 (Tenn. 2003). In other words, the district attorney general's duty is to seek justice. *Johnson*, 538 S.W.3d at 51; *see Berger v. United States* 295 U.S. 629, 633 (1935) (stating that a prosecutor's interest is not to win a case, but to do justice).

The trial court found that the district attorney general's office appeared in court before the general sessions judge, which created an appearance of impropriety in the present case because the general sessions judge was a witness to the alleged bribery. The court did not elaborate further on the rationale for its conclusion.

The statements and arguments of counsel at the hearing reflect that the venue of the present case is a small community in which attorneys in private practice, judges, and prosecutors know one another and are involved with each other in multiple capacities, both related and unrelated to the law. This court knows that the United States Census Bureau reported in 2020 that the population of Bledsoe County, Tennessee was 14,913. *See* Tenn. R. Evid. 201 (judicial notice); U.S. Census Bureau (2020) (retrieved from www.census.gov/quickfacts/bledsoecountytennessee). No evidence was offered to suggest that the district attorney general and his staff were biased in the present case toward the general sessions judge by virtue of their appearance in court before the general sessions judge in other cases or that they would take actions contrary to their duties as prosecutors to seek justice. Likewise, no evidence suggested that these facts influenced the district attorney general and his staff to prosecute the Defendant unfairly or differently than a defendant in a case in which the general sessions judge was not a witness. In the context of a small community in which legal professionals serve in multiple, interconnected roles, a reasonable layperson with knowledge of the facts of this case would not conclude that an appearance of impropriety existed. The defense's arguments at the hearing and on appeal suggest nothing more than a mere possibility of such, which is insufficient to warrant the drastic remedy of disqualification of a district attorney general's office. *See Clinard*, 46 S.W.3d at 187 (stating that "disqualification of one's counsel is a drastic remedy and is ordinarily unjustifiable based solely upon an appearance of impropriety"). We conclude, therefore, that the trial court abused its discretion in ordering disqualification on this basis. *Cf. State v. Derek T. Grooms*, No. W2019-01324-CCA-R10-CD, 2020 WL 9171956 (Tenn. Crim. App. Nov. 25, 2020) (holding that no actual conflict or appearance of impropriety existed to require

disqualification of the district attorney general's office in a case against a defendant who was a victim of a crime being prosecuted in another case by the district attorney general).

We turn to the Defendant's contention that the trial court abused its discretion in not basing its disqualification order on the banking relationship of the district attorney, a member of his staff, and the general sessions judge. Again, no evidence was offered at the hearing, although the statements of counsel and the stipulations of fact again demonstrate the reality of a small community in which legal professionals are engaged in other business activity. No evidence was offered to suggest that the board of directors had any decision-making authority or influence over the bank's lending decisions as regards the district attorney general's loans. No evidence suggests that the district attorney general or his staff would prosecute the Defendant in a way that was inconsistent with the special duties conferred upon a prosecutor merely because the district attorney general had outstanding indebtedness to a bank whose board of directors included a member of the district attorney's staff and the general sessions judge, who was the State's witness. In the context of this community and these facts, a reasonable layperson with knowledge of the facts of this case would not conclude that an appearance of impropriety existed. The trial court did not abuse its discretion in denying the motion to disqualify the district attorney general's office based upon the banking relationship.

In consideration of the foregoing and the record as a whole, we reverse the trial court's order disqualifying the district attorney general and his office. The case is remanded for further proceedings consistent with this opinion.

_____
ROBERT H. MONTGOMERY, JR., JUDGE