# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville August 21, 2013

## STATE OF TENNESSEE v. NORA HERNANDEZ

**Appeal from the Circuit Court for Williamson County**
**No. I-CR026245     Timothy L. Easter, Judge**

---

**No. M2012-02383-CCA-R3-CD - Filed October 7, 2013**

---

Appellant, Nora Hernandez, was convicted by a jury of two counts of felony failure to appear. The trial court merged the convictions and sentenced her to two years, suspended after service of twenty-five days. On appeal, appellant argues that: (1) her action in failing to report to the jail to serve a delayed sentence did not constitute the criminal offense of failure to appear; (2) the trial court erred by failing to dismiss the indictment based on prosecutorial vindictiveness; (3) her conviction should be dismissed because the jury only found her guilty of the elements of misdemeanor failure to appear, an offense for which the statute of limitations had passed; and (4) the trial court erred in sentencing. Following our review, we affirm appellant's convictions, but we vacate the two failure to appear judgments and remand the case for entry of a single judgment reflecting the merger of these convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Vacated; Case Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Drew Justice, Franklin, Tennessee, for the appellant, Nora Hernandez.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Kim R. Helper, District Attorney General; Christopher Vernon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

On March 16, 2010, appellant pleaded guilty in the general sessions court of Williamson County to theft under $500 and simple possession of a schedule VI substance.

The general sessions judge sentenced her to concurrent sentences of eleven months, twenty-nine days in the workhouse, suspended after the service of five days. The judgment forms state that appellant was to report to serve her sentence on April 16, 2010, by 4:00 p.m. She did not report to the jail on that date. Her probation officer contacted the general sessions judge, who changed her report date to July 9, 2010. On June 17, 2010, a probation violation warrant was issued, stating that appellant had violated her probation by failing to pay fines, failing to report to jail (although the warrant noted that her report date was changed to July 9), and failing to report for court-mandated review dates. On July 9, 2010, appellant again failed to report to the jail. The probation violation warrant was amended to include the failure to report on July 9, 2010. Appellant was arrested on the probation violation warrant on December 23, 2010, and her probation was subsequently revoked. On December 28, 2011, she filed a notice of appeal with respect to her probation revocation.

On February 13, 2012, a Williamson County grand jury indicted appellant on two counts of felony failure to appear. Subsequently, appellant filed a motion to quash the indictment for failure to charge a criminal offense, which the trial court denied after a hearing. The trial court also denied appellant's motions to dismiss the indictment for prosecutorial vindictiveness and to dismiss the indictment for the statute's being unconstitutionally vague.

At trial, Nephtaly Feliciano, a probation officer, testified that on March 16, 2010, he met with appellant to review her probation order. He said that appellant signed her probation order, "indicating that she fully understood her requirements to probation and to the court." Mr. Feliciano testified that during the intake process, appellant reported having medical problems and that her report date to serve the five days was set for April 16, 2010, to accommodate her. He said that individuals who receive a delayed report date for their sentences are told to report to the clerk's office on their report date. The clerk's office prepares a mittimus, and the sheriff's department takes custody of the individual at the clerk's office. Mr. Feliciano explained this process to appellant. Mr. Feliciano agreed that the general sessions judge had the authority to order someone into custody "at any point in time if they've been convicted," and he further agreed that he would classify this authority as a "restraint."

Mr. Feliciano testified that on April 16, 2010, he received a telephone call from appellant. Appellant told him that she was unable to report to jail due to medical needs. Later that day, she submitted documentation from her doctor to the general sessions judge. After consulting with Mr. Feliciano about appellant's needs, the general sessions judge changed appellant's report date to July 9, 2010. Mr. Feliciano informed appellant of her new report date.

Mr. Feliciano further testified that on June 3, 2010, appellant missed a court-ordered review date. The review date was rescheduled for June 17. On July 9, 2010, the clerk's office informed Mr. Feliciano that appellant had not reported to jail. Appellant never contacted him with regard to missing the report date. He testified that her probation was revoked in December 2011 and that the probation violation warrant was originally premised on her failure to attend the court-mandated review and later amended to include her failure to report to jail.

Deputy Clerk Donna Green testified that the general sessions clerk's office prepared a mittimus for each of appellant's convictions. Both indicated originally that she was to report on April 16, 2010, and both were amended to indicate a new report date of July 9, 2010.

Sergeant Carol Hughes, the custodian of the records for the booking department at the jail, testified that none of her records indicated that appellant reported to jail on July 9, 2010.

The defense submitted an audio recording of appellant's February 2, 2010 general sessions court appearance. On that date, appellant requested a lawyer "kind of late in the day," as her trial counsel characterized it. The general sessions judge revoked her bond, reinstated a bond of $2,000, and said that an attorney would be appointed the following day. During closing arguments, appellant's counsel argued that "the lawfulness of this whole sentence is fairly dubious" because the general sessions judge violated appellant's right to an attorney.

The jury convicted appellant as charged, and the trial court merged the two convictions. At sentencing, the only evidence presented was a presentence report. The trial court found that appellant had a history of criminal convictions or behavior in addition to that necessary to establish the sentencing range, that appellant failed to comply with the conditions of a sentence involving release into the community, and that appellant was on probation when she committed the felony. *See* Tenn. Code Ann. § 40-35-114(1), -114(8), -114(13). The court stated that it considered the mitigating factor that appellant's conduct neither caused nor threatened serious bodily injury. *See* Tenn. Code Ann. § 40-35-113(1). The trial court imposed a within-range sentence of two years, and after finding that consecutive sentencing was appropriate under Tennessee Code Annotated sections 40-35-115(b) and 39-16-609(f), ordered that she serve her sentence in this case consecutively to the sentence from her general sessions court cases. Finally, the trial court ordered appellant to serve twenty-five days in confinement with the balance of the sentence suspended after finding that some confinement was appropriate because measures less restrictive than confinement had recently been applied unsuccessfully and because confinement was

necessary to avoid depreciating the seriousness of the offense. *See* Tenn. Code Ann. § 40-35-103(1)(B)-(C).

## II. Analysis

### A. Application of Tennessee Code Annotated section 39-16-609

Appellant submits that her conduct in failing to report for a delayed sentence was not failure to appear as criminalized in Tennessee Code Annotated 39-16-609(a)(4), which if true, would require dismissal of her conviction. Her argument is based on her interpretation of the phrase "released from custody . . . on condition of subsequent appearance at . . . [a] penal institution." Tenn. Code. Ann. § 39-16-609(a)(4). She contends that she was not in custody as contemplated by the statute at the relevant time and that her release from custody earlier had not been conditioned on a subsequent appearance at a penal institution. The State responds that the statute unambiguously makes it a criminal offense to fail to appear at a penal institution to serve a sentence and that appellant's conduct constituted failure to appear.

Issues of statutory construction are reviewed de novo with no presumption of correctness. *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). "The most basic principle of statutory construction is to ascertain and give effect to legislative intent without broadening the statute beyond its intended scope." *Id.* "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language[,] and[] in that instance, we enforce the language without reference to the broader statutory intent, legislative history, or other sources." *Id.*

> Tennessee Code Annotated section 39-16-609, in pertinent part, states as follows:
> (a) It is unlawful for any person to knowingly fail to appear as directed by a lawful authority if the person:
>
> . . . .
>
> (4) Has been lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding or penal institution at a specified time or place . . . .

"Custody," as it relates to this title of the code, is defined in Tennessee Code Annotated section 39-16-601(2): "'Custody' means under arrest by a law enforcement officer or under restraint by a public servant pursuant to an order of a court."

Appellant does not argue that failing to report to jail is never a criminal offense, but she contends that in her situation, it was not. We disagree and conclude that the plain meaning of the statute encompasses her conduct. She pleaded guilty to two Class A misdemeanors. From the record, it appears that as part of her plea agreement, she agreed to serve five days in the county workhouse but, due to health concerns, would serve the five days approximately one month after her guilty plea acceptance hearing. Appellant argues that she was "free," *i.e.,* not in custody, during her court appearance and, thus, could not have been released from custody. She may not have been in handcuffs, but we fail to comprehend how she was "free." Appellant was obligated to be in the courtroom to address her charges, and she would have been transferred to the county workhouse the same day that she pleaded guilty if the general sessions court had not accommodated her special needs by allowing her to report at a later date. Therefore, she was under restraint by a public servant - the general sessions court. Appellant was only allowed to leave the courthouse because she agreed to report to the county workhouse in April. Thus, she was released from being under restraint on the condition that she appear at a penal institution at a specific time and place. Appellant's arguments to the contrary are theoretical and stretch the interpretation of the statute far beyond its plain and ordinary meaning. It is clear that the legislature intended to criminalize the failure to report to jail to serve a sentence, which is exactly what appellant did in this case. Therefore, she is without relief as to this issue.

### B. Prosecutorial Vindictiveness

For her second argument, appellant contends that the State punished her for exercising her right to appeal her probation revocation by prosecuting her for two new felonies that covered the same conduct leading to her probation revocation. The State responds that it acted properly and without vindictiveness when it presented the failure to appear charges to the grand jury. We agree with the State.

It is unconstitutional to punish a person for choosing to exercise his or her constitutional rights. *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969) (citing *United States v. Jackson*, 390 U.S. 570, 581 (1968), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Due to the severity of allegations of vindictive prosecution, *see United States v. Goodwin*, 457 U.S. 368, 373 (1982), "the Court has restricted application of the presumption of vindictiveness to situations where 'its objectives are thought most efficaciously served.'" *State v. Phipps*, 959 S.W.2d 538, 542 (Tenn. 1997) (quoting *Texas v. McCullough*, 475 U.S. 134, 138 (1986)). When determining whether a prosecutor's actions give rise to a presumption of vindictiveness, courts should consider "'the nature of the right asserted' and 'the timing of the prosecutor's action.'" *Id.* (quoting *Goodwin*, 457 U.S. at 381-82). "The balance weighs in favor of applying the presumption if the right

asserted by the defendant requires 'duplicative expenditures of prosecutorial resources,' or would require the State 'to do over what it thought it had already done correctly.'" *Id.* at 542-43 (quoting *Goodwin*, 457 U.S. at 383).

If proven, allegations of prosecutorial vindictiveness or selective prosecution in the institution of a prosecution may warrant dismissal of the indictment based on constitutional concerns. *State v. Skidmore*, 15 S.W.3d 502, 508 (Tenn. Crim. App. 1999) (citing *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)). However, if the prosecutor had probable cause to believe the accused committed the underlying offense, the decision to prosecute the accused rests entirely within the prosecutor's discretion, subject to certain constitutional limitations. *Id.* (citing *State v. Superior Oil, Inc.*, 875 S.W.2d 658, 660 (Tenn. 1994); *Quillen v. Crockett*, 928 S.W.2d 47, 51 (Tenn. Crim. App. 1995)).

The record in the instant case shows that appellant was not in court on the probation revocation until December 2011. During argument before the trial court, appellant's counsel said that appellant rejected a plea agreement covering the probation revocation, instead deciding to go through with the revocation hearing. After the court determined that she should serve her entire sentence in confinement, she appealed to the circuit court. She was indicted for failure to appear in February 2012. According to the prosecutor, the State did not know that appellant had failed to report to jail as ordered until she was in court for the probation revocation.

A presumption of prosecutorial vindictiveness is not warranted. The new charges garnered by appellant in this case are separate from the probation revocation case, not increased punishment in the same case. The State had probable cause to initiate the prosecution, and it did so as soon as practicable after learning of the underlying offense. *Skidmore*, 15 S.W.3d at 508. Prosecutorial resources were not duplicated nor was the State required to do over what it thought it had done correctly once because, again, this was a separate case. *Phipps*, 959 S.W.2d at 542. Appellant's arguments to the contrary are without merit.

## C. Failure to Charge Material Elements

Appellant contends that the trial court failed to charge all material elements of felony failure to appear by not instructing the jury that it must find that the occasion for which appellant was required to appear was a Class A misdemeanor or felony. "The law is well-settled in Tennessee 'that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury upon proper instructions.'" *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (*quoting State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001)). However, in this case, the occasions for which

appellant was required to appear were not an issue of fact. She pleaded guilty to theft under $500 and simple possession, both of which, by definition, are Class A misdemeanors. *See* Tenn. Code Ann. §§ 39-14-105, 39-17-418. Thus, her failure to appear in those cases could only be a Class E felony, which is how the grand jury indicted her. *See* Tenn. Code Ann. § 39-16-609(e). Therefore, the trial court did not fail to charge a material element, and appellant is without relief as to this issue.

## D. Sentencing

Appellant submits that the trial court imposed an excessive two-year sentence because (1) it punished her for presenting what the court viewed as a baseless defense; (2) consecutive sentencing was not required for purposes of rehabilitation and was unnecessary because she had already been harshly punished for the same conduct; and (3) the trial court misapplied enhancement factors eight and thirteen. The State responds that the record supports the trial court's sentence. We agree with the State.

### 1. Standard of Review

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing

factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

A trial court should base its decision regarding alternative sentencing on the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

The determination by the trial court of consecutive or concurrent sentencing should not be disturbed on appeal absent an abuse of discretion. *State v. Blouvet*, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). A trial court may, in its discretion, order sentences to be served consecutively to each other if it finds one of seven criteria by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b). "These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing." *State v. Mickens*, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003). Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). The length of the resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id*. § 40-35-103(2).

## 2. Punishment for Presenting Defense

Appellant claims that the trial court punished her for presenting a defense that the general sessions court denied her due process by not appointing her an attorney. The trial court did mention that it was disturbed by this defense twice during the sentencing hearing, but the record does not establish that the trial court inappropriately relied on this issue to enhance appellant's punishment. The first time the court mentioned the defense was after it stated that it agreed with appellant's contention that her conduct neither caused nor threatened serious bodily injury. The court next mentioned the defense when it was discussing alternative sentencing. The court determined that some confinement was necessary in appellant's case because measures less restrictive than confinement had recently been applied unsuccessfully and to avoid depreciating the seriousness of the offense. With regard to the second factor, the trial court said:

> The Court also finds that confinement is necessary to avoid depreciating the seriousness of this offense, and particularly under the facts of this case where the defendant, again, was trying to somehow indicate that she was not going to have her rights protected or somehow she was going to . . . have her rights violated by coming to court, or serving her sentence, and there just was no proof at all in the record of that. . . .
>
> People need to understand that if you don't show up to serve your jail time[] and try to hide behind some fact that just is not supported by the record, then the sentencing will be more severe.

Clearly, the court was concerned that appellant did not report to serve her sentence as a form of protest rather than taking the appropriate legal actions if she believed she had been denied counsel. It was not an abuse of discretion for the court to base its finding that some confinement was necessary to avoid depreciating the offense when it was concerned that

appellant did not, in fact, accord proper gravitas to serving her original sentence. In any event, as the court also found that some confinement was necessary because measures less restrictive than confinement had recently been applied unsuccessfully, the court did not abuse its discretion in ordering a sentence involving twenty-five days of confinement. Appellant is without relief as to this issue.

### 3. Consecutive Sentencing

Appellant contends that the trial court's requiring her to serve her sentence for failure to appear consecutively to her sentences for the Class A misdemeanors for which she had failed to appear was unnecessary. Appellant notes that she was ordered to serve the entire eleven months, twenty-nine days for the Class A misdemeanors after a revocation hearing. She alleges that the eleven-month, twenty-nine-day sentences for the Class A misdemeanors were sufficient to rehabilitate her and that the imposition of a consecutive sentence for failure to appear is essentially punishing her again for the same conduct for which she was already being harshly punished.

Tennessee Code Annotated section 39-16-609(f) specifically gives a court the discretion to order that a defendant serve his or her sentence for failure to appear consecutively to the offense(s) for which the defendant failed to appear. The court in this case appropriately relied on the offense statute as well as Tennessee Code Annotated section 40-35-115(b)(6) in ordering that appellant serve her sentence consecutively to her general sessions cases. Appellant argues that she had already been harshly punished for failing to report to the jail when she was ordered to serve the full sentences for her general sessions cases; however, there were more probation violations alleged than just the failure to report to jail. Furthermore, the legislature clearly sanctioned consecutive sentencing in cases such as this one.

### 4. Application of Enhancement Factors

Finally, appellant contends that the trial court erred by applying enhancement factors (8) and (13) because the facts that she committed the offense while on probation and that she failed to complete a sentence involving release into the community were inherent in the offense itself. *See* Tenn. Code Ann. § 40-35-114(8), -114(13)(C). Contrary to appellant's assertions, the offense of failure to appear does not require as an essential element that a defendant be on probation or fail to comply with the conditions of a sentence involving release into the community. *See* Tenn. Code Ann. § 39-16-609. We conclude that the record supports the trial court's sentencing because it is within the appropriate range and is in

compliance with the purposes and principles of the sentencing statutes. Therefore, appellant is without relief as to this issue.

## E. Merger

As a matter of plain error, we note that despite the trial court's merging of the two failure to appear convictions, the record contains separate judgments and sentences for the convictions with the merger noted in the special conditions section of the forms. However, "[i]n a case such as this one, when two offenses merge, it is proper to enter only one judgment of conviction." *State v. Cecret C. Williams*, No. M2009-01739-CCA-R3-CD, 2010 WL 4674300, at *9 (Tenn. Crim. App. Nov. 17, 2010). Therefore, we must vacate the judgments and remand the case for entry of a single judgment form reflecting the merged conviction.

## CONCLUSION

Based on our review of the record, the briefs of the parties, and relevant legal authorities, we affirm appellant's convictions but vacate the judgments and remand this matter for entry of a corrected judgment form consistent with this opinion.

_____
ROGER A. PAGE, JUDGE