IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 4, 2019 Session

## STATE OF TENNESSEE v. ABBIE LEANN WELCH

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 107201   G. Scott Green, Presiding Judge**

_____

**No. E2018-00240-SC-R11-CD**

_____

This appeal concerns the propriety of the defendant's burglary conviction.  A Knox County grand jury indicted the defendant, Abbie Leann Welch, for misdemeanor theft in violation of Tennessee Code Annotated section 39-14-103, and burglary, a Class D felony, in violation of Tennessee Code Annotated section 39-14-402, for her involvement in a scheme to enter a Walmart retail store, steal merchandise, and have another individual return the merchandise for a gift card.  The defendant previously had been banned from Walmart retail stores for prior acts of shoplifting.  In this case, because the defendant entered Walmart without the effective consent of the owner—said consent having been revoked by letter—and committed a theft therein, the State sought an indictment for burglary rather than criminal trespass.  We hold that the plain language of the burglary statute does not preclude its application to the scenario presented in this case and that, because the statute is clear and unambiguous on its face, we need not review the legislative history to ascertain its meaning.  Application of the burglary statute in these circumstances does not violate due process or prosecutorial discretion.  We affirm the judgment of the Court of Criminal Appeals.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed

ROGER A. PAGE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined.  HOLLY KIRBY, J. filed a concurring opinion.

Patrick T. Phillips, Knoxville, Tennessee, for the appellant, Abbie Leann Welch.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Sarah K. Campbell, Assistant Attorney General; Jeffrey D. Zentner, Assistant Attorney General; Charme Allen, District Attorney General; and Mitchell Eisenberg, Assistant District Attorney General, for the appellee, State of Tennessee.

Jonathan Harwell, Knoxville, Tennessee, for amici curiae Knox County Public Defender's Community Law Office and Tennessee Association of Criminal Defense Lawyers.

Stanley E. Graham, Nashville, Tennessee, and Hyland Hunt, *pro hac vice*, and Ruthanne Deutsch, Washington, DC, for amici curiae Retail Litigation Center, Inc., National Association for Shoplifting Prevention, and Tennessee Retail Association.

## OPINION

### I. FACTS AND PROCEDURAL HISTORY[1]

On October 7, 2015, the defendant, together with friends Krista Brooks and Tonya Cooper, drove to the East Towne Walmart in Knoxville, Tennessee. Seconds before entering the store, the defendant informed Ms. Brooks that she intended to steal items from the store so that Ms. Cooper could then return the items for a gift card. Against the advice of Ms. Brooks, the defendant entered Walmart, exited with purloined merchandise concealed in her purse, and handed the items to Ms. Cooper. Ms. Cooper placed the items in a bag and went inside to return the items while Ms. Brooks purportedly entered Walmart to use the restroom. Ms. Brooks rejoined Ms. Cooper, but before they could exit the store, two men intercepted them and instructed the women to follow them to the loss prevention office where they were questioned.

Ms. Brooks and Ms. Cooper acknowledged that they knew about the defendant's scheme. At that time, security cameras in the loss prevention office showed the defendant driving her van through the parking lot and then into the parking lot of a nearby fast food restaurant. The security system captured video of the defendant sitting in the van while parked in the restaurant's parking lot.

---

[1] Both parties agree that the facts of this case are undisputed. However, a brief summary of the evidence presented at trial frames the issue in proper context.

Matt Schoenrock, an asset protection officer with Walmart, explained that he was walking along the sales floor with another associate and observed the defendant "quickly exiting the store with a large purse that looked to be full of merchandise." Based upon his experience and the defendant's demeanor, Mr. Schoenrock reviewed the video of the defendant while she was inside the store. He recognized the defendant and knew her name because he had "prior incidents" with her. As he reversed the video, he observed the defendant select various articles of clothing and conceal them in her purse.

The video showed that the defendant then exited the store, where she entered a vehicle in which two female occupants were seated. After sitting for several minutes, two females left the vehicle, entered the store carrying bags of merchandise, and approached the service desk to obtain a refund for the merchandise. When the transaction had been completed, Mr. Shoenrock and an associate intercepted the women and escorted them into the asset protection office. He placed a call to the Knoxville Police Department, and officers apprehended the defendant in the restaurant's parking lot. After she was brought to the asset protection office, the defendant admitted her guilt and apologized for her actions. Police officers arrested the defendant and issued citations to Ms. Brooks and Ms. Cooper. Mr. Schoenrock identified a document—a "trespass form"—that he issued to the defendant on January 6, 2015. This form precluded the defendant from entering the store because of prior shoplifting episodes. The defendant previously had received other trespass forms from East Towne Walmart and other stores in the area dating back to 2010.

The State reasoned that entering Walmart after being "trespassed" was equivalent to entering the store without the effective consent of the owner and, therefore, sought an indictment against the defendant for burglary rather than criminal trespass. In January 2016, a Knox County grand jury indicted the defendant for one count of theft of property valued at $500 or less, a Class A misdemeanor,[2] Tenn. Code. Ann. §§ 39-14-103, -105(a)(1) (2018), and one count of burglary, a Class D felony, *id.* § 39-14-402. Specifically, the grand jury indicted the defendant pursuant to Tennessee Code Annotated section 39-14-402(a)(3), which provides that "[a] person commits burglary who, without the effective consent of the property owner[,] [e]nters a building and commits or attempts to commit a felony, theft or assault[.]" Prior to trial, the defendant filed a motion to dismiss the burglary charge, asserting that the burglary statute was unconstitutionally

---

[2] At the time of the offenses in this case, theft of property valued at $500 or less was graded as a Class A misdemeanor. However, effective January 1, 2017, misdemeanor theft was expanded to include property valued at $1000 or less. Tenn. Code. Ann. § 39-14-105 (Supp. 2017). Neither the defendant's conviction nor sentence is implicated by the expansion of the theft grading statute.

vague as applied. The trial court denied the motion, and the defendant was convicted as charged at the conclusion of her May 24, 2017 bench trial. The trial court denied all of the defendant's post-trial motions and imposed concurrent sentences of six years for burglary and eleven months, twenty-nine days for theft to be served on supervised probation.

The Court of Criminal Appeals, in a divided opinion, affirmed the defendant's convictions and sentences. *State v. Welch*, No. No. E2018-00240-CCA-R3-CD, 2019 WL 323826 (Tenn. Crim. App. Jan. 23, 2019). The majority, authored by Judge Timothy L. Easter,[3] reasoned, "[T]he statute is clear that when a person enters any building that is not a habitation, including one otherwise open to the public, without the effective consent of the owner and commits or attempts to commit a felony, theft, or assault therein, they may be prosecuted for burglary pursuant to Tennessee Code Annotated section 39-14-402(a)(3)." *Id.* at *4 (emphasis removed). Moreover, although "retail establishments may generally consent to entry by members of the public at large during normal business hours, such consent is clearly revoked when an individual has been notified in writing that they are no longer allowed on the property." *Id.* Finally, the court noted that simply because prosecutors have not routinely charged repeat shoplifters in this manner does not prevent their ability to do so under the plain language of the statute. *Id.*

Judge Camille R. McMullen dissented, reasoning that "the burglary statute's application to the Defendant, that of a shoplifter previously banned from a retail store, bears no relationship to the common law's and the Model Penal Code's definition of burglary." *Id.* at *6 (McMullen, J., dissenting). Citing an explanatory note to Model Penal Code sections 221.1 and 221.2, the dissent explained "that the continued survival of the offense of burglary 'reflect[ed] a considered judgment that especially severe sanctions are appropriate for criminal invasion of premises under circumstances likely to terrorize occupants'" and that "[a]pplication of the burglary statute to shoplifting cases like this simply runs counter to the time-honored belief that burglary is meant to punish a harmful entry." *Id.* (alteration in original) (citations omitted). Accordingly, the dissent would have found the burglary statute "vague and unenforceable." *Id.*

---

[3] In a recent opinion authored by Judge Easter, the majority noted the frequency with which cases similar to the instant case are being prosecuted and appealed, as well as the disagreement among members of the Court of Criminal Appeals. *State v. Lawson*, No. E2018-01566-CCA-R3-CD, 2019 WL 4955180, at *5 (Tenn. Crim. App. Oct. 8, 2019).

We granted the defendant's application for permission to appeal pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure to consider whether her conviction for burglary violates her right to due process.

## II. ANALYSIS

The defendant's argument asserts that the burglary statute is unconstitutionally vague as applied in this case to the extent that it implicates due process rights. Accordingly, this case involves an issue of statutory construction.

## A. Standard of Review

Because statutory construction of a statute presents questions of law, we review such questions de novo with no presumption of correctness. *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015) (citing *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013); *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010); *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

When engaging in statutory interpretation, "well-defined precepts" apply. *State v. Frazier*, 558 S.W.3d 145, 152 (Tenn. 2018) (quoting *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017)); *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016); *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Howard*, 504 S.W.3d at 269 (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)); *Carter*, 279 S.W.3d at 564 (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)). In construing statutes, Tennessee law provides that courts are to avoid a construction that leads to absurd results. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)). "Furthermore, the 'common law is not displaced by a legislative enactment, except to the extent required by the statute itself.'" *Wlodarz v. State*, 361 S.W.3d 490, 496 (Tenn. 2012) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002)), *abrogated on other grounds by, Frazier v. State*, 495 S.W.3d 246 (Tenn. 2016).

"When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language . . . ." *Carter*, 279 S.W.3d at 564 (citation omitted); *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). A statute is

ambiguous when "the parties derive different interpretations from the statutory language." *Howard*, 504 S.W.3d at 270 (quoting *Owens*, 908 S.W.2d at 926).

> However, this proposition does not mean that an ambiguity exists merely because the parties proffer different interpretations of a statute. A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of a statute. In other words, both interpretations must be reasonable in order for an ambiguity to exist.

*Frazier*, 558 S.W.3d at 152 (quoting *Powers v. State*, 343 S.W.3d 36, 50 n.20 (Tenn. 2011)) (internal quotation marks omitted).

If a statute is ambiguous, the Court "'may reference the broader statutory scheme, the history of the legislation, or other sources' to determine the statute's meaning." *Id*. (quoting *Sherman*, 266 S.W.3d at 401). The Court must "endeavor to resolve any possible conflict between statutes to provide for a harmonious operation of the laws." *Id*. at 153 (citing *Lovlace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013)). "'Where a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision.'" *Id*. (quoting *Lovlace*, 418 S.W.3d at 20); *Arnwine v. Union Cnty. Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003). Moreover, "'[w]hen one statute contains a given provision, the omission of the same provision from a similar statute is significant to show that a different intention existed.'" *Frazier*, 588 S.W.3d at 153 (quoting *State v. Lewis*, 958 S.W.2d 736, 739 (Tenn. 1997)).

### B.  Plain Language of the Statute

Turning first, as we must, to the plain language of the statute itself, the burglary statute states:

(a)    A person commits burglary who, *without the effective consent of the property owner*:

    (1)    Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;

    (2)    Remains concealed, with the intent to commit a felony, theft or assault, in a building;

- 6 -

(3)     *Enters a building and commits or attempts to commit a felony, theft or assault*; or

(4)     Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Tenn. Code Ann. § 39-14-402(a) (2018) (emphases added).

Tennessee Code Annotated section 39-11-106(a)(11) defines "effective consent" as "assent in fact, whether express or apparent." "When the legislature does not provide a specific definition for a statutory term, this court may look to other sources, including *Black's Law Dictionary*, for guidance." *State v. Ivey*, No. E2017-02278-CCA-R3-CD, 2018 WL 5279375, at \*6 (Tenn. Crim. App. Oct. 23, 2018) (citing *State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007)). "'Assent' has been defined as an 'agreement, approval, or permission; esp., verbal or nonverbal conduct reasonably interpreted as willingness.'" *Id.* (quoting Black's Law Dictionary 115-16 (10th ed. 2014)). Here, it is clear that the defendant received a no-trespass form and did not have the effective consent of Walmart to enter or remain on its property.

Moreover, "the word 'building' is not a complex legal term." *State v. Bowens*, No. E2017-02075-CCA-R3-CD, 2018 WL 5279374, at \*7 (Tenn. Crim. App. Oct. 23, 2018). The words contained in a statute must be given their ordinary and common meaning. *State v. Gentry*, 538 S.W.3d 413, 420 (Tenn. 2017). The "natural and ordinary meaning" of the term is "a structure with walls and a roof, esp. a permanent structure." *Bowens*, 2018 WL 5279374, at \*7 (quoting Black's Law Dictionary 194-95 (10th ed. 2014)). As the Court of Criminal Appeals has concluded, "[b]ecause the word 'building' in subsection 39-14-402(a)(3) is not ambiguous, there is no ambiguity to resolve in favor of [the] [d]efendant under the rule of lenity."[4] *Id.* at \*7; *see also Ivey*, 2018 WL 5279375, at \*10-11 (Tenn. Crim. App. Oct. 23, 2018).

---

[4] This Court invited *amicus curiae* to file briefs in this case. The Tennessee Association of Criminal Defense Lawyers and the Knox County Public Defender filed a brief asserting that the statute is ambiguous when viewed in context and under the rule of lenity and that "there is nothing in the legislative history or explanatory comments to suggest that, at any point during the process, anyone intended that (a)(1) and (a)(3) cover different sets of buildings." The rule of lenity has been described as a "tie-breaker" for a defendant in the event of an unresolved ambiguity in a statute, *State v. Marshall*, 319 S.W.3d 558, 563 (Tenn. 2010), but resorting to the rule first necessitates a "grievous ambiguity or uncertainty" in the statute, *Huddleston v. United States*, 415 U.S. 814, 831 (1974).

It is noteworthy that Tennessee Code Annotated section 39-14-402(a)(1) contains the phrase "not open to the public" whereas section 39-14-402(a)(3) does not. The canon of statutory construction *expressio unius est exclusio alterius* provides that "where the legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the legislature acted purposefully in the subject included or excluded." *State v. Loden*, 920 S.W.2d 261, 265 (Tenn. Crim. App. 1995); *Frazier*, 558 S.W.3d at 153 (quoting *Lewis*, 958 S.W.2d at 739) (noting that "[w]hen one statute contains a given provision, the omission of the same provision from a similar statute is significant to show that a different intention existed").

The defendant, however, relies heavily on the interpretation proffered in a recent law review article, Jonathan Harwell, *Burglary at Wal-Mart: Innovative Prosecutions of Banned Shoplifters Under Tenn. Code Ann. § 39-14-402*, 11 Tenn. J.L. & Pol'y 81 (2016). The article posits that because the phrase was used to modify "building" the first time it is referenced in the statute, it should be inferred thereafter. *Id.* at 88. In other words, the phrase "not open to the public" in (a)(1) should be "construed as coextensive" with the other provisions to "streamline the statute." *Id.* at 88-89. Thus, the point is that subsection (a)(1) *and* (a)(3) of the burglary statute was not intended to cover buildings open to the public. Even so, this interpretation finds little support in our well-established tenets of statutory construction. We presume that the legislature purposely included the phrase "not open to the public" in code subsection 39-14-402(a)(1) and purposely excluded the same phrase from subsection -402(a)(3). The same presumption applies to the legislature's inclusion of "other than a habitation" in subsection -402(a)(1) and exclusion of "other than a habitation" in subsection -402(a)(3).

When the text of a statute is clear and unambiguous, we need not look beyond the plain language of the statute to ascertain its meaning. *Green v. Green*, 293 S.W.3d 493, 507 (Tenn. 2009) (citing *State v. Strode*, 232 S.W.3d 1, 9-10 (Tenn. 2007); *Corum v. Holston Health & Rehab. Ctr.*, 104 S.W.3d 451, 454 (Tenn. 2003). This Court has stated that "no matter how illuminating" legislative history is, it "cannot provide a basis for departing form clear codified statutory provisions." *Lee Med., Inc.*, 312 S.W.3d at 528. Because the plain language of the burglary statute is clear, we will not depart from our long-held canons of statutory construction and delve into the legislative history of an unambiguous statute.

## C. Constitutional Challenge

The defendant argues that the statute at issue in this case, Tennessee Code Annotated section 39-14-402(a)(3), is "vague and unenforceable because the statute fails to give "fair warning such that a person of common intelligence would understand what is prohibited." She also alleges that the "personal predilections of the District Attorney caused [the District Attorney] to exercise her discretion such as to make a misdemeanor offense of criminal trespass into a felony," and that in doing so, "expand[ed] the reach of the burglary statute beyond the plain meaning" in violation of the doctrine of Separation of Powers. The State responds that the plain language of the statute supports the statutory interpretation by the district attorney in this case and "clearly makes punishable as a burglary the entry into a store from which one has repeatedly been banned, to commit theft."

In Tennessee, the General Assembly's task is "to define what shall constitute a criminal offense and to assess punishment for a particular crime." *State v. White*, 362 S.W.3d 559, 567 (Tenn. 2012) (quoting *State v. Farner*, 66 S.W.3d 188, 200 (Tenn. 2001) (citation omitted)) (internal quotation marks omitted). However, the constitutional principle of due process dictates, "among other things, notice of what the law prohibits." *Id*. (quoting *Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 655 (Tenn. 2005)). Under our principles of due process, a vague statute is subject to a constitutional challenge if it: "(1) fails to provide fair notice that certain activities are unlawful; and (2) fails to establish reasonably clear guidelines for law enforcement officials and courts, which, in turn, invites arbitrary and discriminatory enforcement." *State v. Pickett*, 211 S.W.3d 696, 702-03 (Tenn. 2007) (citing *Rose v. Locke*, 423 U.S. 48, 49-50 (1975); *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974); *State v. Forbes*, 918 S.W.2d 431, 448 (Tenn. Crim. App. 1995)).

The relevant case law applicable to a constitutional challenge on the grounds of vagueness is well-developed. *See, e.g., State v. Crank*, 468 S.W.3d 15, 22-23 (Tenn. 2015); *Pickett*, 211 S.W.3d at 704; *State v. Lyons*, 802 S.W.2d 590, 591 (Tenn. 1990); *State v. Wilkins*, 655 S.W.2d 914, 915-16 (Tenn. 1983); *State v. Thomas*, 635 S.W.2d 114, 116 (Tenn. 1982). This Court has held:

> "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 [ ] (1972). The fair warning required embodied in the due process clause prohibits the states from holding an individual criminally responsible for conduct which he could not have reasonably understood to be proscribed. *United States v. Harriss*, 347 U.S. 612, 617 [ ] (1954). Due process requires that the law give sufficient

- 9 -

warning so that people may avoid conduct [that] is forbidden. *Rose v. Locke*, 423 U.S. 48, 49-50 (1975)."

*Lyons*, 802 S.W.2d at 591 (quoting *Thomas*, 635 S.W.2d at 116); *see White*, 362 S.W.3d at 566 (noting that statutes must give persons "of ordinary intelligence a reasonable opportunity to know what is prohibited, so that [they] may act accordingly") (alteration in original) (citations and internal quotation marks omitted).

"'A criminal statute that forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.'" *Leech v. Am. Booksellers Ass'n*, 582 S.W.2d 738, 746 (Tenn. 1979) (citing U.S. Const. amend. XIV, § 1 ("[N]or shall any state deprive any person of life, liberty, or property, without due process of law . . . ."); Tenn. Const. art. I, § 8 ("[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.")). However, this Court has explained that

> "[t]he fair warning requirement . . . does not demand absolute precision in the drafting of criminal statutes. A statute is not vague [that] by orderly processes of litigation can be rendered sufficiently definite and certain for purposes of judicial decision . . . . In fact, it is the duty of the courts to adopt a construction [that] will sustain a statute and avoid constitutional conflict if its recitation permits such a construction."

*White*, 362 S.W.3d at 567 (quoting *State v. Burkhart*, 58 S.W.3d 694, 697-98 (Tenn. 2001)).

> The due process doctrine of vagueness also encompasses as a principal element the requirement that legislatures set reasonably clear guidelines for law enforcement officials and triers of fact to prevent arbitrary and discriminatory enforcement. A statute may be held vague on its face if it provides no legally fixed standards and leaves to the "personal predilections" of an officer, prosecutor, judge or jury the determination of the illegality of conduct.

*Lyons*, 802 S.W.2d at 591 (citations omitted). The constitutional test for vagueness is whether a statute's "'prohibitions are not clearly defined and are susceptible to different interpretations as to what conduct is actually proscribed.'" *Forbes*, 918 S.W.2d at 447-48

(quoting *Grayned*, 408 U.S. at 108; *Baggett v. Bullitt*, 377 U.S. 360, 367 (1964)); *Crank*, 468 S.W.3d at 23.

The defendant finds support for her position in the dissenting opinion authored by Judge McMullen in the Court of Criminal Appeals. Judge McMullen posited that "fundamental fairness requires that this individual be charged with the misdemeanors of shoplifting and criminal trespass" and that "prosecutors violate procedural due process by abusing their charging discretion and by unilaterally and unreasonably expanding the reach of the burglary statute." *Welch*, 2019 WL 323826, at *5 (McMullen, J., dissenting). Moreover, she notes that "because the offenses of shoplifting and criminal trespass more than adequately address the harm involved when a banned individual commits an act of shoplifting, application of the burglary statute in cases like this violates procedural and substantive due process." *Id.* at *6.

Judge McMullen also cited concerns about the overall statutory scheme. She noted that "Tennessee Code Annotated section 39-14-105 was amended to provide that theft of property or services is a Class A misdemeanor if the value of the property or services obtained is $1000 or less, rather than the previous threshold of $500 or less." *Id.* (citing Tenn. Code Ann. § 39-14-105(a)(1)). Tennessee Code Annotated section 39-14-146 was amended to add subsection (c), which provides that "[n]otwithstanding any other law, a fifth or subsequent [shoplifting] conviction in a two-year period shall be punished one (1) classification higher than provided by § 39-14-105, and subject to a fine of not less than three hundred dollars ($300) nor more than the maximum fine established for the appropriate offense classification." Tenn. Code Ann. § 39-14-146(c). In short, Judge McMullen posited that "these amendments evince an understanding that shoplifting is a petty, non-violent property offense that should not be punished as harshly as burglary." *Id.* at *6. The defendant argued this point, as well.

The defendant implies that by amending section 39-14-146(c) to increase the punishment for five-time shoplifters, the legislature expressed its displeasure with the State's prosecution for burglary at retail stores. A canon of statutory construction is "that the General Assembly is aware of its own prior enactments." *Lee Med., Inc*., 312 S.W.3d at 527 (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)). Accordingly, we presume that the legislature was aware of Tennessee Code Annotated section 39-14-402(a)(3) and its application at the time it amended Tennessee Code Annotated section 39-14-146(c) to increase the punishment for serial shoplifters. *Carter,* 279 S.W.3d at 564 (citing *Ki v. State*, 78 S.W.3d 876, 879 (Tenn. 2002)) ("We must presume that the General Assembly is aware of prior enactments and of decisions of the courts when enacting legislation."). Had the legislature not intended such an application

of the burglary statute, it has since had the opportunity to amend the statute after the first appellate court decisions affirming such prosecutions were released in 2018. *See Bowens*, 2018 WL 5279374, at *11; *Ivey*, 2018 WL 5279375, at *11. In the absence of legislative action, we presume that the legislature intended both statutes to act in concert with each other.

"Two statutes prohibiting the same wrong and prescribing different degrees of punishment cannot exist at same time." *Mowery v. State*, 352 S.W.2d 435, 437 (citing *State v. Lewis*, 278 S.W.2d 81, 82 (Tenn. 1955)). The burglary statute and the "serial shoplifter" statute prohibit different criminal activities. The two offenses have different elements and punish different wrongs. The burglary statute is applicable to offenders, including repeat shoplifters, who enter a building without the effective consent of the owner and commit a felony theft or assault therein, whereas the repeat shoplifting statute is limited in its applicability. *See Welch*, 2019 WL 323826, at *4. There is no indication that the legislature's intent in enacting the serial shoplifting statute was to repeal subsection 39-14-402(a)(3) by implication. *Id.*; *see Mowery v. State*, 352 S.W.2d 435, 438 (Tenn. 1961).

The State summarized its argument as follows: "Anybody of common intelligence can understand from the plain language of section (a)(3) that if she has been told she does not have consent to enter a store, but she enters anyway and commits a theft, she will have committed burglary." We agree.

Burglary charges stemming from thefts committed inside retail stores are not unique to Tennessee. Some states follow our statutory construction. *See, e.g., Brasuell v. State*, 472 S.W.3d 499, 502 (Ark. Ct. App. 2015) (interpreting Arkansas's commercial burglary statute to permit defendant's prosecution for Class C felony burglary of Walmart after receiving a "notice of restriction from property"); *People v. Bradford*, 50 N.E.3d 1112, 1120 (Ill. 2016) (explaining that the burglary statute applies when an individual enters a public building lawfully but, with the intent to commit a theft or felony, *inter alia*, continues to remain on the premises after his authority is explicitly revoked); *State v. Acevedo*, 315 P.3d 261, 266 (Kan. Ct. App. 2013) (affirming burglary convictions for offenses committed in retail stores because the "aggravated burglary statute contain[ed] no language that exclude[d] from its purview a building generally open to the public, if entry into that building is unauthorized"); *State v. Loggins*, 464 S.W.3d 281, 284 (Mo. Ct. App. 2015) (affirming burglary conviction where "there was no evidence that Wal-Mart either expressly or impliedly rescinded its notification banning [the defendant] from the property" and that the notice "remained in effect, rendering [the defendant's] entry unlawful"); *State v. Skrepenski*, 2014 WL 2957812, No. WD-13-036, *6 (Ohio Ct. App.

June 27, 2014) (affirming the defendant's burglary conviction based upon entering a Walmart store after being "trespassed" and committing a theft therein); *State v. Kutch*, 951 P.2d 1139 (Wash. Ct. App. 1998) (interpreting the state's burglary statute as applying to shoplifters who return to the same store to shoplift after being issued a no-trespass letter). *Cf. Todd v. State*, 494 S.W.3d 444, 450 (Ark. Ct. App. 2016) (stating that the evidence was insufficient to support conviction for commercial burglary because Walmart is open to the public *and there was no evidence that the defendant had been banned from the premises*).

Other jurisdictions have lessened the quantum of criminal liability and do not require a retail store that is open to the public to expressly revoke its consent to enter to sustain a conviction for burglary. *See, e.g., People v. Isom*, 193 Cal. Rptr. 3d 58, 60 (Cal. Ct. App. 2015) (affirming conviction for burglary based on California Penal Code section 459, which criminalizes the act of entering a store "with intent to commit grand or petit larceny or any felony," regardless of whether any felony is actually committed after entering the establishment); *State v. Rawlings*, 363 P.3d 339, 342 (Idaho 2015) (articulating that, pursuant to the Idaho burglary statute, "[e]very person who enters any house, . . . shop, warehouse, store, . . . or other building . . . with intent to commit any theft or any felony, is guilty of burglary" and that "there is no requirement that a burglar actually commit a theft . . . [t]he crime is complete when there is an entry with the intent to commit a theft . . . ").[5] *But see State v. King*, 386 P.3d 886, 890 (Haw. 2016) (finding evidence insufficient to support conviction for second-degree burglary because Hawaii's statute defines "enter or remain unlawfully" as requiring that a person "def[y] a lawful order not to enter or remain," not merely that the person be issued a "no trespass" letter).

In contrast, New Mexico has specifically rejected application of a felony burglary statute to a situation involving a "no trespass" letter issued by a retail store that is otherwise open to the public. *State v. Archuleta*, 346 P.3d 390, 395-96 (N.M. Ct. App. 2014) ("[W]e conclude that violating an order of no trespass by entering an otherwise open public shopping area with the intent to commit a theft does not constitute the type of harmful entry required for a violation of the burglary statute . . . [and] that to hold otherwise allows the State to use the burglary statute to enhance the misdemeanor act of trespassing to a felony. . . .").

---

[5] We note that the relevant burglary statutes in the cited cases are distinguishable from that of this State in that those statutes contain no requirement that the defendant's entry be "without the effective consent of the property owner." *See* Idaho Code Ann. § 18-1401; Cal. Penal Code § 459.

In reviewing cases from other jurisdictions, this Court is particularly persuaded by a recent opinion issued by the Illinois Supreme Court. *People v. Johnson*, 2019 WL 3559640, ___ N.E.3d ___ (Ill. Aug. 1, 2019). In that case, the defendant was charged with burglary for "without authority" and "knowingly" entering a Walmart store "with the intent to commit therein a theft." *Id.* at *1. The defendant appealed his conviction, arguing, among other issues, that "the passage of the retail theft statute . . . evinced a legislative intent to occup[y] the field of shoplifting crimes." *Id.* at *3 (internal quotation marks omitted). The intermediate appellate court reversed the defendant's conviction, and the State appealed to the Illinois Supreme Court, which granted leave to appeal. *Id.*

The Illinois Supreme Court first enunciated its burglary statute: "A person commits burglary when without authority he or she knowingly enters or without authority remains within a building, . . . or any part thereof, with intent to commit therein a felony or theft."[6] *Id.* (alteration in original) (citing 720 Ill. Comp. Stat. 5/19-1(a)). Although Illinois is one of the states that has lowered the quantum of criminal liability necessary to sustain a conviction for burglary of a retail store, the court nonetheless utilized statutory construction[7] to arrive at the conclusion that the criminal offense committed in that case was encompassed by the burglary statute. *Id.* at *3-4 (citing cases for various propositions, including that "[f]or over 100 years, Illinois case law has recognized that entering a retail store with the intent to commit a theft amounts to the crime of burglary," that "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open," and that "[a]n entry with intent to commit a theft cannot be said to be within the authority granted patrons [of a business]").

Illinois considered and rejected a vagueness argument advanced by the defendant in that case, reasoning as follows:

---

[6] Notably, the term "without authority" is synonymous with our statute's language, "without the effective consent of the owner."

[7] Tennessee and Illinois share many of the same canons of statutory construction. Specifically, Tennessee's precept that courts must presume that the legislature is aware of prior enactments and of appellate court decisions interpreting those enactments when passing legislation goes hand in hand with Illinois' guidance: "When the legislature chooses not to amend a statute following judicial construction, it is presumed that the legislature has acquiesced in the court's construction of the statute and the declaration of legislative intent." *Johnson*, 2019 WL 3559640, at *3. Both *State v. Bowens*, No. E2017-02075-CCA-R3-CD, 2018 WL 5279374 (Tenn. Crim. App. Oct. 23, 2018) and *State v. Ivey*, No. E2017-02278-CCA-R3-CD, 2018 WL 5279375 (Tenn. Crim. App. Oct. 23, 2018) addressed this precise issue and were released by the Court of Criminal Appeals in October 2018. Yet, the legislature has not reacted to those opinions by amending the statute in question.

- 14 -

Finally, we note that defendant makes a broad and vague argument that the legislature did not intend for the limited authority doctrine to apply to an unauthorized-entry burglary involving retail stores following the enactment of the retail theft statute. Defendant asserts that the legislature intended for acts of shoplifting to be prosecuted and punished under the retail theft statute rather than the burglary statute.

While it is true that the legislature intended acts of retail theft to be prosecuted under the retail theft statute, defendant's argument misses the point. His alleged act of shoplifting was prosecuted under the retail theft statute. He was convicted of burglary, by contrast, for his distinct act of entering a store with the intent to shoplift. The two crimes contain different elements and address distinct harms. Burglary requires an intent to commit a theft upon entry and is complete upon the moment of entry whether or not any theft actually occurs, whereas retail theft requires that the defendant take possession of merchandise with the intent of permanently depriving the merchant of the item without paying full retail value. Defendant's argument also rests on the mistaken premise that the harm caused by shoplifting and the harm caused by entering a store with the intent to shoplift are measured in the same way—by the value of the items a person steals or intends to steal. But, as noted above, a person who enters a store with the intent to steal is at least arguably more culpable than a person who steals after entering innocently. Although defendant may disagree with the assessment of the relative culpability posed by his conduct or the risk presented by it, it is the legislature's role to declare and define conduct constituting a crime and to determine the nature and extent of the punishment for it.

*Id.* at *7 (citations omitted).

In sum, our review leads us to conclude that the burglary statute is properly applied to defendants who enter a store without the effective consent of the owner and therein commit a theft, felony, or assault.[8] We hold that Tennessee Code Annotated

---

[8] In their joint amici curiae brief, the Knox County Public Defender's Community Law Office and the Tennessee Association of Criminal Defense Lawyers point out that the burglary statute has been in effect since 1989, yet prosecutions under the burglary statute of persons who shoplift after having been banned from a retail establishment for previously shoplifting did not begin until 2015. They maintain that

section 39-14-402(a)(3) is not vague as applied. It is not ambiguous and provides fair warning to individuals who enter a building without the owner's effective consent and commit a felony, theft, or assault. In addition, we find no due process violation in construing Tennessee Code Annotated section 39-14-402(a)(3) to be applicable to buildings open to the public, such as a retail stores, when, as in this case, consent to enter has been expressly revoked. As aptly stated by the Idaho Supreme Court, "[The defendant] may not like the fact that retail stores are within the ambit of the statute during business hours, but that is a matter within the discretion of the legislature." *Rawlings*, 363 P.3d at 342.

As pointed out by amici curiae Retail Litigation Center, Inc., National Association for Shoplifting Prevention, and Tennessee Retail Association, "no trespass" letters are critical to breaking the cycle of recidivist shoplifting. If individuals comply with the letters, they serve to avoid future encounters between loss prevention officers and "serial shoplifters." However, "no-trespass letters serve little purpose if they are effectively voided any time a person manages to re-enter a store in defiance of being barred from the premises." The "more sensible approach," as advocated by amici, is the one adopted in this case and others in Tennessee and several other states. It "recognizes that shoplifters who re-enter a store to steal (again) after being formally barred have committed a serious crime, which will be deterred only with serious penalties."

### D. Prosecutorial Discretion

---

since 2015 there have been more than 500 prosecutions of this sort involving only Walmart. There have been prosecutions involving other retailers as well. They point out that persons convicted of burglary serve longer sentences; therefore, they assert that the fiscal impact of these prosecutions is enormous, costing taxpayers $165,000 more for a single defendant convicted of burglary rather than shoplifting. They assert that the General Assembly could not have intended such a significant fiscal impact. These arguments, "however meritorious, must be directed to the General Assembly, not the courts." *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 524 (Tenn. 2013). Our holding in this case is based squarely on the plain language of the statute. We are not at liberty to amend or alter statutes or "substitute our own policy judgments for those of the General Assembly." *Britt v. Dyer's Empl. Agency, Inc.*, 396 S.W.3d 519, 523 (Tenn. 2013). "[I]t is up to the General Assembly, not this Court, to promulgate the parameters of the offense." *State v. Owens*, 20 S.W.3d 634, 641 (Tenn. 2000). The arguments of the joint amici should be presented to the General Assembly, and the General Assembly may want to consider whether the plain language of the burglary statute accurately reflects its intent. *See Payne v. State*, 493 S.W.3d 478, 492 (Tenn. 2016).

The defendant posits that "[e]ven if one finds no ambiguity and that the statute is not vague and over-broad, there remains the issue of abuse of prosecutorial discretion" and that "[a] novel application" of a statute may rise to that level. It is well-established that prosecutors have wide discretion in deciding what charges to bring against a defendant. "A District Attorney General is an elected constitutional officer whose function is to prosecute criminal cases in his or her circuit or district." *Ramsey v. Town of Oliver Springs*, 998 S.W.2d 207, 209 (Tenn. 1999) (citing *State v. Superior Oil, Inc.*, 875 S.W.2d 658, 660 (Tenn. 1994). The Tennessee Constitution provides the basis for a popularly-elected District Attorney General, Tenn. Const. art. VI, § 5, while the legislature codified many of the duties and responsibilities attendant to the office, Tenn. Code Ann. § 8-7-103(1). Foremost among them is that "[e]ach district attorney general . . . [s]hall prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto . . . ." *Ramsey*, 998 S.W.2d at 209 (alterations in original). "The District Attorney General's discretion to seek a warrant, presentment, information, or indictment within its district is extremely broad and subject only to certain constitutional restraints." *Id.* (citing *Superior Oil*, 875 S.W.2d at 660; *Dearborne v. State*, 575 S.W.2d 259, 262 (Tenn. 1978); *Quillen v. Crockett*, 928 S.W.2d 47, 50-51 (Tenn. Crim. App. 1995)).

This Court observed in *Superior Oil*:

> "[T]here are no statutory criteria governing the exercise of the prosecutorial discretion traditionally vested in the officer in determining whether, when, and against whom to institute criminal proceedings. Indeed, it has been often recognized that 'prosecutorial discretion in the charging process is very broad.' So long as the prosecutor has probable cause to believe that the accused committed an offense, the decision whether to prosecute, and what charge to bring before a grand jury generally rests entirely within the discretion of the prosecution . . . ."

*Ramsey*, 998 S.W.2d at 210 (quoting *Superior Oil*, 875 S.W.2d at 660).

Our United States Supreme Court has also recognized a prosecutor's vast discretion:

> A prosecutor exercises considerable discretion in matters such as the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, [and] which persons should be charged with what offenses . . .

- 17 -

. These decisions, critical to the conduct of a prosecution, are all made outside the supervision of the court.

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987). "'[S]o long as the prosecutor has probable cause to believe that the accused committed an offense . . . , the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely within his discretion.'" *State v. Jones*, 2019 WL 5956361, at *8, ___ S.W.3d ___, ___ (Tenn. 2019) (alteration in original) (quoting *State v. Harris*, 33 S.W.3d 767, 771 (Tenn. 2000)). "Prior to indictment, the district attorney 'has virtually unbridled discretion in determining whether to prosecute and for what offense.'" *State v. Mangrum*, 403 S.W.3d 152, 163 (Tenn. 2013) (quoting *Dearborne*, 575 S.W.2d at 262). This Court has held that even in cases in which a defendant's conduct could have supported less severe criminal charges with penalties more proportionate to the actual harm that the defendant caused, decisions about "whether to prosecute and for what offense" are matters of prosecutorial discretion. *State v. Gentry*, 538 S.W.3d 413, 427 (Tenn. 2017). Given the expansive nature of the prosecutor's discretion, we cannot agree that the prosecutor abused her discretion by charging the defendant with burglary under the facts of this case.

### III. CONCLUSION

We conclude that the language of the statute criminalizing burglary is clear and unambiguous on its face. We further conclude that the statute is not unconstitutionally vague as applied and that nothing in the statute precludes its application to the fact scenario presented herein. The prosecutor did not exceed her discretion in interpreting and applying the statute in this regard. Therefore, we affirm the judgment of the Court of Criminal Appeals. It appearing that the defendant Abbie Leann Welch is indigent, costs of this appeal are taxed to the State of Tennessee.

_____
ROGER A. PAGE, JUSTICE